### BUCK v. SWANSON et al.
### No. 562.

District Court, D. Nebraska, Lincoln Division.

Dec. 28, 1939.

Louis D. Frohlich and Herman Finkel-stein, both of New York City, and L. J. TePoel, of Omaha, Neb., for plaintiffs.

William J. Hotz, Sp. Asst. to the Atty. Gen., of Nebraska, John Riddell, Asst. to the Atty. Gen., of Nebraska, Gordon Diesing, of Omaha, Neb., and Andrew Bennett, of Washington, D. C., for defendants.

Before GARDNER, Circuit Judge and MUNGER and DONOHUE, District Judges.

GARDNER, Circuit Judge.

This is a suit in equity in which plaintiffs seek to enjoin the enforcement of Legislative Bill 478 of the State of Nebraska, Laws 1937, c. 138, and which by its terms became effective May 17, 1937.

The American Society of Composers, Authors and Publishers, a voluntary unincorporated association under the General Associations Law of New York, consisting of a large number of persons, firms and corporations who own or control copyrighted vocal or instrumental musical compositions, as authors, composers and publishers, through Gene Buck, its president, and certain individuals and corporations interested in copyrighted musical compositions are the plaintiffs. The secretary of state, the state treasurer, the auditor of public accounts, and the attorney general, all of the State of Nebraska, as well as the county attorneys of various counties of Nebraska, are the defendants.

The statute, the enforcement of which is sought to be enjoined, is too voluminous to be set out herein in haec verba, but it will be found in the subjoined note.[1]

There are approximately 1,000 composer members of the American Society of Composers, Authors and Publishers, hereinafter referred to as ASCAP, in the United

---

[1]
### Legislative Bill No. 478

An Act relating to monopolies; declaring to be an unlawful monopoly and its purposes to be in restraint of trade, any combination of persons, firms or corporations which fixes and determines the amount of money to be paid to it or to its members for the privilege of rendering privately or publicly for profit within this state copyrighted vocal or instrumental musical compositions, when such combination is composed of a substantial number of all musical composition copyright owners or their heirs, successors or assigns; to require each composer and each author of vocal or instrumental copyrighted musical compositions to act independently of each other and of any combination as herein declared unlawful in determining license fees and other rights within this state; to require the author, composer, printer and publisher to specify upon the musical composition the selling price thereof for all uses that may be made thereof including public performance for profit within this state; to declare that any purchaser thereof, who pays such price therefor, shall have the right to render such music privately or publicly for profit within this state; to declare all existing agreements requiring license fees or other exactions for the privilege of rendering copyrighted musical compositions publicly for profit within this state with any combination of persons, firms or

States, and 123 publisher members who constitute the principal publishers of the country. Each member has assigned to the society the exclusive right of public performance for profit of his copyrighted musical compositions for periods of five years at a time, the present contracts between the society and its members expiring

corporations herein declared unlawful to be void and nonenforceable; to permit the present owners, possessors and users of such copyrighted music to render the same privately or publicly for profit within this state without interference by such unlawful combination; to provide for the appointment of a receiver and injunctive relief and the dissolution of such combination as herein declared unlawful; to determine in such action the legal owner of such copyrighted musical compositions; to adjust and fix in such action the license fee to be paid, if any, and the terms for the use of such musical compositions in this state; to provide for the protection of theatres, moving picture houses, hotels, places for education and public performance or amusement, radio broadcasting, radio receiving and radio re-broadcasting stations affiliated with other persons, firms or corporations outside the State of Nebraska against the collection of license fees or other exactions by such out-of-the-state affiliates for or on account of any combination declared unlawful under Section 1 hereof; to provide that the responsibility and all liability for any infringement of copyrighted musical compositions conveyed by radio broadcast, air, wire, electrical transcription or sound production apparatus, or by personal performance coming from outside this state, and used herein to rest entirely with the out-of-the-state person, firm or corporation originally emanating or sending the same into this state for use herein; to provide penalties for the violation hereof; to empower the County Attorneys and the Attorney General, upon complaint of any party aggrieved by any violation hereof, to proceed to enforce the penalties hereof against such combination and any of its representatives, members or agents, and against the property of such unlawful combination within this state; to define the method of service of process upon such combination as herein declared illegal; to empower any party aggrieved by any violation hereof to proceed in his own right hereunder; to define the legal procedure required to carry out the provisions hereof; to provide for the recovery of costs, expenses and attorney's fees; to provide for the filing of each said composition in the office of the Secretary of State before selling or disposing of the same, together with the amount of filing fee therefor; to provide that the terms of this Act shall be cumulative; to provide that any part of this Act declared illegal shall not affect the validity of the remaining parts hereof; and to declare an emergency.

Be it Enacted by the People of the State of Nebraska:

Section 1. It shall be unlawful for authors, composers, proprietors, publishers, owners, or their heirs, successors or assigns, of copyrighted vocal or instrumental musical compositions to form any society, association, club, firm, partnership, corporation, or other group or entity, called herein a combination, either within this state or outside thereof, when the members, stockholders, or interested parties therein constitute a substantial number of the persons, firms or corporations within the United States who own or control copyrighted vocal or instrumental musical compositions, and when at least one of the objects of any such combination is the determination and the fixation of license fees or other exactions required by such combination for itself or its members, stockholders or other interested parties for any use or rendition of copyrighted vocal or instrumental musical compositions for private or public performance for profit within this state for the purpose of preventing free competition among or with different and competing copyright owners or among or with persons, firms, corporations or associations in this state using or rendering such copyrighted matter by public performance for profit; or for the purpose of dividing among them the proceeds of the earnings of such copyright owners; or for the purpose of fixing the exactions and fees for the rendition or use of copyrighted matter which any copyright owner must charge; and the collection or attempted collection within this state of such license fee or other exaction so fixed and determined, by any member, agent or representative of any such combination herein declared unlawful, from any person, firm, corporation or association within this state, including theatres, radio receiving, radio broadcasting and radio re-broadcasting stations, moving picture houses, athletic associations, hotels, cafes, restaurants, clubs, dance halls, recreation rooms, amusement parks, pavilions, churches, colleges, schools, universities, or the officers, directors, proprietors, managers, owners or representatives

December 31, 1940. The society has issued blank licenses to the users of its copyrights, by which the latter are permitted to perform publicly for profit at any time, all the musical compositions owned, written or composed by members of the society without requiring further consent of the owner of the particular composition performed.

thereof, who render or cause to be rendered, or permit to be rendered, such copyrighted vocal or instrumental musical compositions privately or publicly for profit within this state through personal performance, or through radio, or any instrumentality or sound producing apparatus, shall be and the same is hereby declared unlawful and illegal; and such license fees or other exactions shall not be collected in any court within the boundaries of this state; and each collection or attempted collection of such license fee or other exaction by such combination or its agents, representatives, members, stockholders or interested parties shall be a separate offense hereunder; and any such combination of authors, composers, publishers, or their heirs, successors or assigns, as herein defined, is hereby declared to be an unlawful monopoly in this state; and such fixing of prices for use or rendition of copyrighted musical compositions within this state by such unlawful combination and the collecting or attempting to collect such license fees or other exactions by it or for its stockholders, members or other interested parties within this state is hereby declared illegal and in restraint of trade, and such collection or attempted collection thereof is declared to be an illegal intrastate transaction within this state and shall be subject to the terms and penalties of this Act. In any action, civil or criminal, instituted under the provisions of this Act, it shall be prima facie evidence against any party to such action of the existence of such unlawful combination for the purposes in this Act enumerated, if a substantial number of all authors, composers, proprietors, publishers, owners, or their heirs, successors or assigns of copyrighted vocal or instrumental musical compositions in the United States, are shown to be members of any society, association, club, firm, partnership, corporation, group or entity.

Sec. 2. (A) All authors and composers, and their heirs and assigns, shall have within this state all the benefits conferred by the Copyright Laws of the United States, being the act of March 4, 1909, c. 320, Section 1 (e), 35 Stat. 1075, Title 17 U.S.C.A. Each author, composer and publisher shall act independently of any and all substantial number or numbers of other authors, composers and publishers, and also independently of any such combination as in Section 1 hereof declared unlawful, in determining and fixing the price to be charged for the use or rendition of his copyrighted musical compositions within this state, and the author, composer or publisher, or his, her, or its heirs, successors or assigns, shall specify or cause to be specified legibly upon the musical composition, in whatever form the same may be published, printed, manufactured or otherwise prepared for use or rendition within this state, the selling price thereof for private rendition or public rendition for profit if made available for such public rendition so arrived at and determined for all uses and purposes; and when any publisher or user acquires the same within this state and pays the selling price so specified thereon to the seller or publisher of said copyrighted musical composition, then said purchaser or user may use or render, or cause or permit to be used or rendered within this state, the said copyrighted musical composition by persons individually or with other performers, actors and singers, or by an individual instrument player, or by orchestras and bands, or over or through or by means of radios, loud speakers, radio receiving, radio broadcasting and radio re-broadcasting stations, electrical transcriptions, musical records, sound apparatus or otherwise within this state, and the same may be so rendered either privately or publicly for profit when so purchased and paid for without further license fees or other exactions; and such copyright owner or proprietor, in the event of such payment, shall be deemed to have received full compensation for the rendition and all uses of such musical compositions for private purposes or for public performance for profit by such purchaser within this state.

(B) In the event any author, composer or publisher, or any of his heirs, successors or assigns, fails or refuses to affix on the musical composition the selling price, and collect the same, for private and public performances for profit, at the time and in the manner specified in this Act, then any person, firm or corporation in this state who may have purchased and paid for such copyrighted musical composition may use the same for private or public performance for profit within this state without further license fee or other exaction; and such person, firm or corporation so using or rendering the same shall be free from any and all liability in any infringement or

These blanket licenses include not only the right to perform the works of the members of the society, but also grant the right to perform the works of some 44,000 members of other similar societies throughout the civilized world, with which societies AS-CAP has contracts authorizing such licenses.

injunction suit, or in any action to collect damages, instituted by such copyright proprietor or owner in any court within the boundaries of this state.

(C) Nothing in this section, or this Act, shall be construed to give to any purchaser of copyrighted music compositions, as herein provided, the right to resell, copy, print, publish, or vend the same.

(D) Any composer, author or publisher of vocal or instrumental copyrighted musical compositions, or any person, firm or corporation controlling the sale or distribution of said compositions, whether or not within the purview of the combination described in Section 1 of this Act, shall, before selling or disposing of any such composition in this state, file in the office of the Secretary of State a copy of each said composition upon which shall be written, printed or typed over his or its signature a statement to the effect that he or it controls the sale or disposition of such composition; and provided further, said person, firm or corporation who shall make such filing shall accompany the same with a fee of Twenty-five cents (25¢) with each copy of said composition so filed to reimburse the Secretary of State for keeping in current and convenient form, easily accessible to the public, the titles of said compositions and the names of the persons, firm or corporations who shall file said copies from time to time; and provided further, said Secretary of State shall deposit all the fees received hereunder weekly with the state Treasurer who shall credit said fees to the general fund of the state.

Sec. 3. All existing contracts, agreements, licenses or arrangements now existing within this state made by any person, firm or corporation with any combination, declared unlawful under Section 1 hereof, are hereby declared void and nonenforceable in any court within the boundaries of this state, and are hereby declared to have been entered into as intrastate transactions with such unlawful combination and in restraint of trade; and further, all such contracts, agreements, licenses, arrangements and the attempted enforcement thereof within this state, may be enjoined by any person, firm or corporation sought to be bound thereby; and any member, representative or agent of such unlawful combination enforcing or attempting to enforce the terms of such existing contract, license or arrangement within this state

shall be guilty of a violation of the terms of this Act, and for each such collection or attempted collection shall be subject to the penalties hereinafter provided.

Sec. 4. (A) Any person, firm or corporation who owns, leases, operates or manages a radio broadcasting, radio receiving or radio re-broadcasting station within this state, shall be and is hereby authorized to receive, broadcast and rebroadcast copyrighted vocal or instrumental musical compositions within this state, the copyrights of which are owned or controlled by any such combination declared unlawful by Section 1 hereof, without the payment, to such combination or to its agents, representatives or assigns, of any license fee or other exaction declared illegal and non-collectible by the terms hereof.

(B) When such radio receiving, radio broadcasting or radio re-broadcasting station is affiliated with any other person, firm or corporation owning, leasing or operating a radio broadcasting station outside this state from whence copyrighted vocal or instrumental musical compositions originate or emanate, and which are received, used, broadcast or re-broadcast within this state, in accordance with the terms of any affiliation agreement or other contract, then such person, firm or corporation owning, leasing, operating or managing a radio broadcasting station outside this state, shall be and is hereby prohibited from in any manner charging or attempting to charge, or collecting or attempting to collect, from any person, firm or corporation who owns, leases, operates or manages a radio broadcasting, radio receiving or radio re-broadcasting station within this state, any herein declared non-collectible license fee or other exaction, for the purpose of paying or repaying the same outside this state to any combination, or its members, stockholders or other interested parties, declared unlawful by Section 1 hereof; and any such person, firm or corporation, collecting or attempting to collect, such license fee or other exaction against such persons, firms or corporations within this state for the purpose of paying or reimbursing itself for having paid any such license fee or other exaction herein declared unlawful and non-collectible within this state, shall be deemed guilty of a violation of the provisions of this Act; and such person, firm or corporation from without this state is hereby declared to be an agent and representa-

In Nebraska there are some 350 dance pavilions and ballrooms of a class that are independent of taverns where dancing is carried on incidentally. There are ten radio stations operating within the state, of which one is affiliated with the Columbia Broadcasting Network and one with the National Broadcasting Network. The other

tive of such combination as declared illegal and unlawful by Section 1 hereof, and shall be subject to all the penalties hereof.

Sec. 5. (A) Any person, firm or corporation who owns, leases, operates or manages any theatre or theatres, moving picture house or houses, or a similar place or places for amusement and public performance within this state, shall be and is hereby authorized to receive, use and render, or cause to be received, used and rendered within this state, by the personal performance of artists, singers, musicians, orchestras, bands, or actors, or by loud speakers, radio, sound production or re-production apparatus or instrumentalities, or electrical transcriptions, or by any other means of rendition whatsoever within this state, copyrighted vocal or instrumental musical compositions, the copyrights of which are owned or controlled by any such combination declared unlawful by Section 1 hereof, without the payment, to such combination, or to its agents, representatives or assigns, of any license fee or other exaction declared illegal and non-collectible by the terms of this Act.

(B) When such theatre or theatres, moving picture house or houses, or other places for amusement or performance within this state is or are affiliated or under contract in any manner whatsoever with any other person, firm or corporation furnishing in any form or manner copyrighted musical compositions from outside this state, or supply such persons, firms, or corporations in this state with radio broadcasts or electrical transcriptions, sound production instrumentalities or apparatus, or artists, performers, musicians, singers, players, orchestras, bands or other artists or talent, wherein or whereby copyrighted vocal or instrumental musical compositions are privately or publicly rendered for profit, then such person, firm or corporation outside this state shall be and is hereby prohibited from in any manner charging or attempting to charge, or collecting or attempting to collect within this state, from any such person, firm or corporation who owns, leases, operates or manages such theatre or theatres, moving picture house or houses, or other places for amusement or public performance within this state, any license fee or other exaction for the purpose of paying or repaying the same to any such combination declared unlawful by Section 1 hereof for the use, rendition or performance of such copyrighted musical compositions within this state; and any such person, firm or corporation, collecting or attempting to collect, such license fee or other exaction from outside this state against such persons, firms or corporations within this state for the purpose of paying or reimbursing itself for having paid any such license fee or other exaction herein declared unlawful and non-collectible, shall be deemed guilty of a violation of the provisions of this Act; and such person, firm or corporation from without this state is hereby declared to be an agent and representative of such combination as declared illegal and unlawful by Section 1 hereof, and shall be subject to all the penalties hereof.

Sec. 6. Whenever any person, firm or corporation who owns, leases, operates or manages a radio receiving, radio broadcasting or radio re-broadcasting station, or theatre or moving picture house or similar place for amusement and public performance or for the rendition in any manner of copyrighted vocal or instrumental musical compositions within this state, and which radio stations and theatres, and other persons, firms or corporations, aforementioned, are affiliated with persons, firms or corporations outside this state from whence said copyrighted vocal or instrumental musical compositions originally emanate either by radio, sound production instrumentalities or apparatus, or by furnishing a person or persons to play or sing such music within this state, then any responsibility and liability for the use of all copyrighted vocal or instrumental musical compositions thus emanating from outside this state and thus rendered in this state shall rest with and be upon such affiliated person, firm or corporation from outside this state who originates the broadcasting or the performance or the sound production instrumentality or apparatus, or sends the personal singers or performers into this state; and, if the owner of any copyrighted musical composition commences any action within this state on account of any use or rendition thereof in this state through such affiliate or affiliates, then any defendant in such action may interplead such affiliate or affiliates in such action; and any judgment which may be rendered in favor of the copyright owner shall be paid and satisfied by such affiliate or affiliates; and, if paid or satisfied by the defendant

384

stations initiate their own vocal and instrumental musical programs. A large number of theaters are users of music. There are 284,000 radio receiving sets in private homes, and about one-third of the population of the state at some time during the year attend dances and balls where music is played. In 1938 approximately $12,000

user in this state, such defendant shall be subrogated in said action or otherwise to all rights of the plaintiff in said judgment as against said affiliate or affiliates, whether the latter is or are a party or parties in said action or not; and in any event such affiliate or affiliates shall be liable to such user to the full extent of his liability to such copyright owner, in the absence of any agreement to the contrary; and any combination declared unlawful by Section 1 of this Act which is the owner or proprietor of or controls the copyrighted vocal or instrumental musical compositions, its agents or representatives shall be and are hereby prohibited from suing for infringement, loss or damage within the boundaries of this state, for the use or rendition of such copyrighted vocal or instrumental musical compositions so originating or emanating because such persons, firms or corporations used, rendered or performed the same within this state; the use or rendition by radio broadcast, radio re-broadcast or sound producing instrumentalities or apparatus, or electrical transcription, or by the personal performance of singers, players and musicians sent into this state, or otherwise, of such copyrighted musical compositions within this state in the manner set forth in this section, shall be considered, for the purpose of this Act, as intrastate business of this state and subject to the control, regulation and prohibitions set forth in this Act notwithstanding that such copyrighted musical compositions originated or emanated from without this state.

Sec. 7. (A) Any person, firm or corporation within this state who shall act as the representative of any combination herein declared unlawful as defined in Section 1 hereof, shall, for the purpose of this Act, be deemed an official representative and agent of such unlawful combination and shall be construed to be doing business within this state, and service of any process against such combination may be had upon such representative or the agent of any such representative as herein defined within this state; and when so served, such process shall have the same legal effect as if served upon a duly elected officer or managing agent or other official representative upon whom service might otherwise be made upon such combination within this state.

(B) Furthermore, any person or persons who negotiates for, or collects within this state, or attempts to collect license fees or other exactions, or who acts as the representative or agent for any combination declared unlawful in Section 1 hereof, shall, for the purpose of this Act, be considered as a part of said unlawful combination; and such person, firm or corporation shall be subject to all the penalties in this Act provided for violations thereof.

Sec. 8. Any combination as in Section 1 hereof declared unlawful and any other person, firm or corporation, acting or attempting to act, within this state in violation of the terms of this Act, or any representative or agent of any person, firm or corporation who aids or attempts to aid any such unlawful combination, as defined in Section 1 hereof, in the violation of any of the terms of this Act in any manner whatsoever within this state, shall be deemed guilty of a misdemeanor and shall be fined in any sum not more than $5,000.00 or imprisoned for not more than one (1) year, or both, such fine and imprisonment for each and every violation of the terms hereof.

Sec. 9. (A) The County Attorney in each county in this state wherein a violation of any of the terms of this Act takes place, in whole or in part, is hereby authorized upon the complaint of any party aggrieved to institute a civil or criminal action, or both, under the terms hereof against any combination declared unlawful as defined in Section 1 hereof, and against any of its members, stockholders or other interested parties, and its agents or representatives as herein defined, and to enforce any of the rights herein conferred, and to impose any of the penalties herein provided.

(B) The Attorney General of the State of Nebraska is hereby empowered to proceed upon the request of any County Attorney to aid and assist, or to take charge of, any prosecution or suit for any violations of any of the terms hereof.

(C) Or, the Attorney General, on the complaint of any party aggrieved, because of the violation of any of the terms of this Act anywhere within this state, shall proceed in the District Court in any county in which all or any part of the offense or violation was committed, to institute action against any combination defined as unlawful by Section 1 hereof, and against the representatives or agents of any such combination, either in a criminal action to enforce the penalties hereof, or in a civil action to enforce all

was collected by ASCAP from the theaters in the state. The largest radio station in Nebraska pays about $26,000 to the society annually. Another group of stations paid the society about $27,000 in 1938. There were 391 signed contracts with users of music in Nebraska introduced in evidence, upon which an aggregate of approximately

rights hereunder, or to dissolve any such combination as declared unlawful by Section 1 hereof, or he may proceed by both civil and criminal actions; in such action or actions, the plaintiff shall be the State of Nebraska; and any interested party may, upon application, be granted leave to intervene in such a civil action.

(D) The District Court shall, in such dissolution or other civil suit, upon the application and intervention in said action of any member, stockholder or other interested party of said unlawful combination, adjudicate the ownership of any copyrighted vocal or instrumental musical composition theretofore owned or controlled by said unlawful combination; and furthermore, such District Court shall have and is hereby granted the power and authority to appoint a receiver and to issue injunctive and mandatory temporary and permanent orders in reference to any of the issues involved in such action; and any person, firm or corporation within this state who is a user in any manner of any copyrighted vocal or instrumental musical compositions theretofore owned or controlled by such unlawful combination may, upon application, intervene in such action and therein have adjusted, determined and adjudicated all rights for or against the person, firm or corporation whom the Court shall finally determine to be the owner or proprietor of such copyrighted vocal or instrumental musical compositions; and said parties shall be permitted no other remedy in any other court within the boundaries of this State, whether the same be for damages, infringement or otherwise, until final decree has been had in said action determining the ownership and terms for use of such copyrighted musical compositions.

Sec. 10. (A) Any person, firm or corporation within this state aggrieved by any violation of the terms hereof by any unlawful combination, as defined in Section 1 hereof, or any of its representatives or agents, may proceed in his or its own name and right in the District Court in the county in which the violation, or a part thereof, took place, to recover any right, loss or damage that may have resulted from any violation of the terms hereof; the plaintiff in such action shall be entitled to recover his or its costs and expenses and a reasonable attorney's fee to be fixed by the court in such action.

(B) In the event of the failure or refusal of a County Attorney, or the Attorney General, to promptly act, as herein provided, when requested so to do by any aggrieved party, then such party may institute in his own behalf, or upon behalf of the plaintiff and all others similarly situated, the same civil action as such County Attorney or Attorney General might have instituted under the terms of this Act, and with like procedure, powers, authority, rights, privileges, effect and final decree as the said County Attorney or Attorney General might have done under the terms of this Act.

Sec. 11. (A) In any action, either civil or criminal, that may be had or instituted under the provisions hereof for any violation of the terms hereof, the plaintiff in any form of action brought hereunder, and in which action any combination declared unlawful, as defined in Section 1 hereof, or the members, stockholders, or other interested parties, or their agents or representatives of such unlawful combination, are defendants, any attorney of record for the plaintiff may file a request in writing with the Clerk of the District Court in which said action is pending, demanding that the defendant or defendants furnish plaintiff, or file with the Clerk of the Court, in which the action is pending exact copies of all documentary evidence, facts and figures, records or data in the possession or under the control of the defendant or defendants pertaining to the issues as alleged by the plaintiff to establish or refute any issues in the case; and the District Court, upon the presentation to it of such written demand by the plaintiff, shall thereupon determine that part or all of such evidence which shall be produced, and shall enter an order fixing a time for the defendant or defendants to furnish and file such information as ordered. A copy of said order shall be mailed to each defendant at his or its last known address, which shall be deemed sufficient notice and service upon said defendant or defendants; or the same may be served by mail in the same manner upon each attorney of record for the defendant or defendants, and when so served, the same shall be deemed notice and service upon the defendant or defendants for whom said attorneys appear of record.

(B) If said defendant or defendants shall fail to furnish plaintiff or his or its attorney, or file with the Clerk of the Court in which the action is pending, said copy or copies of said documentary

$20,000 was paid ASCAP during 1938. The society is given, by its members, the exclusive right to make collections, fix prices, and otherwise carry on the public performance of all the musical compositions it controls. Some $6,000,000 was taken in for public performance rights by the society in the United States during 1938. Fifty per cent of its net commissions was divided among the composer members and the other fifty per cent was divided among the publisher members. These groups are classified, but the classification does not seem to have any material bearing upon the issues presented. Of the popular music necessary for the successful operation of radio stations, dance halls, hotels and theaters, the society has control of about 85% or 90% and also has control of from 50% to 75% of the standard or older music that is played occasionally. All of the large and more influential publishers of music in the United States are members of the society. The users of music in Nebraska can not successfully carry on their business except they deal with the plaintiff society because there is no place where nor person or agency to whom users of music in Nebraska may go in order to deal for public performance rights and negotiate for music in any substantial amount sufficient to meet the ordinary needs of music users in the state, except the society.

All the contentions of plaintiffs, as well as those of the defendants, go to the constitutional validity of the statute involved. Whether or not, under the common law of Nebraska the contracts between ASCAP and its members, and between it and the users of music in Nebraska, are valid or not, we need not consider. That issue is not before us, but the single question is the constitutional validity of the challenged statute.

It appears from the evidence that prior to the organization of the plaintiff society, an author or composer who had obtained a copyright for his production had no practical means of enforcing the exclusive right given him by the Copyright Act. He was not so equipped nor organized to discover violations of his rights, and it would require much time and a large amount of money to enforce his rights by means of litigation. Users of music, on the other hand, who wished to buy the rights of public performance for profit, were unable to ascertain who the copyright owner was and to whom to go. It was for the purpose of protecting the legal rights of its members in their copyrighted musical compositions against infringement by public performance for profit that the society was organized.

 The control or prohibition of combinations in restraint of trade and the prohibition of monopolistic practices is recognized as a proper exercise of the police power of the state. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Waters-Pierce Oil Co. v. Texas, 212 U.S. 112, 115, 29 S.Ct. 227, 53 L.Ed. 431; Bayside Fish Flour Co. v. Gentry, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772; Crescent Cotton Oil Co. v. Mississippi, 257 U.S. 129, 42 S.Ct. 42, 66 L. Ed. 166; Central Lumber Co. v. South Dakota, 226 U.S. 157, 33 S.Ct. 66, 57 L.Ed.

evidence, facts, figures, records, books and data as set forth in said order within the time specified in said order, the Court shall adjudge said defendant or defendants guilty of contempt of court, and the Court shall assess a fine of $100.00 against such of the defendants for each and every day that such defendant or defendants fails to comply with said order; and judgment shall from time to time be rendered therefor, and the plaintiff may collect the same against the defendant or defendants with 6% interest thereon and the costs, including expenses and attorney's fees to be fixed by the Court, in the same manner as other judgments are collected in this state. The Court shall find and determine when the judgment is rendered what disposition shall be made of the proceeds collected after the payment of costs, expenses and any attorney's fees that may be allowed.

Sec. 12. If any section, subdivision, sentence or clause in this Act shall, for any reason, be held void or non-enforceable, such decision shall in no way affect the validity or enforceability of any other part or parts of this Act.

Sec. 13. Nothing in this Act shall be construed as repealing any other law or parts of laws in reference to any of the matters contained in this Act; and the rights and remedies and provisions herein provided shall be and are hereby declared to be cumulative to all other rights, remedies and provisions now provided under the laws of the State of Nebraska.

Sec. 14. Whereas an emergency exists, this Act shall be in full force and take effect, from and after its passage and approval, according to law.

Approved, May 17, 1937.

164; Paramount Pictures v. Langer, D.C., 23 F.Supp. 890. While regulation of such public practices as are deemed to be contrary to the public policy of the state is a proper exercise of its police power, yet the exercising of such power is subject to the restrictions imposed by the Federal Constitution, which must, of course, be recognized as the supreme law of the land. A state statute, though enacted in pursuance of the police power, is void if in contravention of any express provision of the Federal Constitution or of a valid federal statute, or if it constitutes an interference with matters that are within the exclusive scope of federal power.

The Act of March 4, 1909, Chap. 320, Sec. 1 (e), 35 Stat. 1073, Title 17 U. S.C.A. §§ 1–63, enacted pursuant to the grant of power in Article 1, Section 8 of the Constitution, was intended to grant valuable enforcible rights to authors and publishers without burdensome requirements, in order to afford greater encouragement to the production of literary works of lasting benefit to the world. Washingtonian Pub. Co. v. Pearson, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470. The policy and purpose of the statute is to grant to the individual the right to control the use of the production covered by the copyright. Of course, the Act gives him no right to combine with others to insure control of prices and the consequent power of monopoly of an entire field by combination. Plaintiffs urge necessity as a justification or warrant for their organization. It is urged that without some such means of protection, the individual copyright owner is helpless to protect his rights, but if the statute violates no rights guaranteed to the plaintiffs by the Constitution or laws of the United States, the motive for the organization or acts of ASCAP, however impelling is not material.

It is contended that the state statute deprives copyright owners of the right to control public performance for profit of their copyrighted musical compositions apart from the sale of sheet music. The copyright is distinct from the material object copyrighted. It is an intangible incorporeal right in the nature of a privilege or franchise quite independent of any material substance such as the manuscript or the plate used for printing. King Features Syndicate v. Fleischer, 2 Cir., 299 F. 533. The owner of the copyright has the right to dispose of it on such terms as he may see fit, or he may decline to dispose of it on any terms. He has an individual right of exclusive enjoyment similar to that of a patentee of an invention. United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114, 85 A.L.R. 1488; United States v. American Bell Telephone Co., 167 U.S. 224, 17 S.Ct. 809, 42 L.Ed. 144; Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349; American Tobacco Co. v. Werckmeister, 207 U.S. 284, 28 S.Ct. 72, 52 L.Ed. 208, 12 Ann.Cas. 595; Caliga v. Inter Ocean Newspaper Co., 215 U.S. 182, 30 S.Ct. 38, 54 L.Ed. 150; Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co., 7 Cir., 154 F. 358. The society as an assignee of the rights of each author is a representative of that individual right. There are, too, individual plaintiffs before the courts, and they are interested individually in the public performance rights of particular musical compositions. In American Tobacco Co. v. Werckmeister, supra, it is said [207 U.S. 284, 28 S.Ct. 74, 52 L. Ed. 208, 12 Ann.Cas. 595]: "* * * the law recognizes the artistic or literary productions of intellect or genius, not only to the extent which is involved in dominion over and ownership of the thing created, but also the intangible estate in such property which arises from the privilege of publishing and selling to others copies of the thing produced."

While the Copyright Act may not enhance the right of proprietorship, it certainly does not lessen that right. As said by the Supreme Court in Caliga v. Inter Ocean Newspaper Co., supra [215 U.S. 182, 30 S.Ct. 39, 54 L.Ed. 150], "The statute created a new property right, giving to the author, after publication, the exclusive right to multiply copies for a limited period."

The right of an author in his intellectual production is similar to any other personal property right. It is assignable and it may be sold and transferred in its entirety, or a limited interest therein, less than the whole property, may be sold and assigned, and the various rights included in the entire ownership may be split up and assigned to different persons. Sales may be absolute or conditional and they may be with or without qualifications, limitations or restrictions. Atlantic Monthly Co. v. Post Pub. Co., D.C.Mass., 27 F.2d 556; American Tobacco Co. v. Werckmeister, supra.

Section 2 (A) of the state statute requires the author, composer or publisher

to specify legibly upon the musical composition, in whatever form it may be published, "the selling price thereof for private rendition or public rendition for profit if made available for such public rendition so arrived at and determined for all uses and purposes."

The right of public performance in connection with the composition includes separate and distinct rights, among them being: (1) the right of publication; (2) the motion picture rights; (3) the stage rights; (4) the recording rights; and (5) the radio reproduction rights. The copyright owner might wish to grant one of these rights to one party and another right to a different party. As the exclusive owner, he is entitled to that right. The above statute, however, interferes with his so doing.

Section 2 (B) of the statute provides that: "In the event any author, composer or publisher, or any of his heirs, successors or assigns, fails or refuses to affix on the musical composition the selling price, and collect the same, for private and public performances for profit, at the time and in the manner specified in this Act, then any person, firm or corporation in this state who may have purchased and paid for such copyrighted musical composition may use the same for private or public performance for profit within this state without further license fee or other exaction; and such person, firm or corporation so using or rendering the same shall be free from any and all liability in any infringement or injunction suit, or in any action to collect damages, instituted by such copyright proprietor or owner in any court within the boundaries of this state."

Under this subsection, the copyright owner in effect must offer the public performance rights of his copyrighted composition for sale and use in Nebraska, and if he does not choose so to do any person purchasing the composition may use it in the state for public performance without any liability to the copyright owner. This provision, we think, clearly deprives the owner of the copyright of rights to which he is entitled under the Copyright Act. As observed, his rights of ownership entitle him to sell or offer to sell, or to withhold from sale, as he may choose.

The state statute can not be justified as a method of exercising the police power. The police power may not be extended to the extent of taking private property for a public use. Panhandle Eastern Pipe Line Co. v. State Highway Commission, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090.

While the power reasonably to restrain unlawful monopolistic trade-restraining combinations from exercising any rights in the state may be conceded, an act which compels the owner of a copyright to offer it for sale in a certain way, and if he fails so to do to take it from him without compensation, violates the due process and equal protection clauses of the Constitution, and it is also violative of the Federal Copyright Act.

The state statute contains a separability provision (Section 12), which provides that: "If any section, subdivision, sentence or clause in this Act shall, for any reason, be held void or non-enforceable, such decision shall in no way affect the validity or enforceability of any other part or parts of this Act."

The Supreme Court of Nebraska has held that a statutory expression of the separability of various sections or provisions of a statute is an aid merely to judicial interpretation. First Trust Co. v. Smith, 134 Neb. 84, 277 N.W. 762; Laverty v. Cochran, 132 Neb. 118, 271 N.W. 354; Hubbell Bank v. Bryan, 124 Neb. 51, 245 N.W. 20. In Laverty v. Cochran supra, the court in speaking of a severance clause contained in a statute said [132 Neb. 118, 271 N.W. 359]: "The rule is that, although a statute may be invalid or unconstitutional in part, the other parts will be sustained where they can be separated from the part which is void. Muldoon v. Levi, 25 Neb. 457, 41 N.W. 280. But the parts of the statute which are valid must be capable of being executed independently of the invalid parts in order to be operative. State v. Ure, 91 Neb. 31, 135 N.W. 224. The statutory provision expressing legislative intent as to the separability of the various parts of a statute is merely an aid to judicial interpretation."

But where the connection between the invalid parts and the other parts of the statute is such as to warrant the belief that the legislature would not have passed the act without the invalid parts, the whole act must be held inoperative. The provision of the statute which we are here considering is such an essential part of the statute as not to be separable.

In view of our conclusion on this phase of the case, it is unnecessary to consider the other contentions that have been ably argued and elaborately briefed by counsel for the respective parties.

We conclude that permanent injunction restraining the enforcement of this statute must be granted. Counsel for plaintiffs may prepare findings of fact and conclusions of law, together with form of decree in accordance with this opinion.