**Michael R. MURA, Plaintiff,**

v.

**COLUMBIA BROADCASTING SYSTEM, INC., et al., Defendants.**

United States District Court
S. D. New York.

Sept. 14, 1965.

Leon Pearle, New York City, for plaintiff; Robert L. Horkitz, New York City, of counsel.

Coudert Brothers, New York City, for defendants; Carleton G. Eldridge, Jr., Eugene L. Girden, New York City, of counsel.

LEVET, District Judge.

This action is for infringement of copyrights owned by plaintiff, Michael R. Mura. These copyrights cover three hand puppets, in the form of a mouse, a pig and a rooster, which were allegedly displayed by defendant Columbia Broadcasting System, Inc. (CBS) on its "Captain Kangaroo Show."

Approximately 100 other defendants were originally joined as defendants. Because of lack of venue and inadequate service the complaint was dismissed as to certain of these defendants. See decision dated April 28, 1965 and the succeeding order.

The trial, conducted before the court without a jury, was confined to the issue of liability. After hearing the testimony of the parties, examining the exhibits, the pleadings, the briefs and the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. At some time prior to October, 1952 or 1953, plaintiff designed a mouse hand puppet (Ex. 4), a pig hand puppet (Ex. 5) and a rooster hand puppet (Ex. 6). (5, 26, 49, 52) [1]

2. A hand puppet is a replica (in this instance of a mouse, a pig and a rooster, respectively) which is operated by the use of a hand rather than by strings. (51) The manipulator places the puppet on his hand with one or two fingers in the head and at least one finger in each arm and causes the head and arms to move. (52)

3. The plaintiff first started manufacturing the hand puppets in late Oc-

1. Numbers in parentheses following the Findings of Fact refer to pages in the trial transcript.

tober 1952 or 1953 and first offered them for sale about two weeks later. (49) They were designed as toys for children, to be used as puppets or as a stuffed animal, only the head being stuffed. (51, 52)

4. The puppets were sold on the open market to be used as hand puppets without limitation. The only instructions to the sales representatives were "to take as many orders as they could from stores." (52, 53) Plaintiff never instructed her sales representatives to limit use to amateurs. (53, 54) She never mentioned any restrictions on use after sale. (54) She sold at least 1,000 puppets each year (54, 55) to various department stores, where anybody could buy them (50, 51) at the recommended retail price of $5.95 or somewhere between $5.95 and $6.95. (75) The purchases by defendant CBS were made at bona fide retail stores. (87)

5. Since 1954 and over a period of years, plaintiff, in connection with the sale of her hand puppets, utilized and distributed a sales brochure (Ex. B) which contained two dimensional reproductions of the hand puppets. No copyrights were pictured on the reproduction of the puppets but the brochure bore at the lower right hand corner the legend: "(R) PNDG Copyright 1954 Michael R. Mura." (69, 70)

6. All of the puppets sold by the plaintiff in the open market had affixed to the base or lower section of each puppet a label (Ex. A) bearing the legend: "100% WOOL—HAND MADE—Michael's Menagerie Ⓒ Michael R. Mura" (with a distinctive picture of a circus cage). (67, 68) Prior to the use of the label copyright and notice (Ex. A), plaintiff used a copyright notice in the form of an indelible hand stamp on the back of the body of the hand puppet, but none of these were sold. (68, 69)

7. On or about March 14, 1955, certificates of registration of claims to copyright in works of art were issued to plaintiff by the United States Copyright Office for the mouse hand puppet, register No. 7927 (Ex. 1), for the pig hand puppet, register No. 7926 (Ex. 2), and for the rooster hand puppet, register No. 7922 (Ex. 3). (3–4) The plaintiff has not sold or assigned her rights in said copyrights. (27)

8. In September and October 1957, defendant CBS presented a television program known as "The Captain Kangaroo Show," broadcast on a six-day-a-week basis. (101) Defendant Robert Keeshan Associates or its predecessor in interest, Keeshan-Miller Enterprises Corp., has at all times since October 3, 1955 authorized, directed and produced the Captain Kangaroo program. (84–86) In October 1957, defendant Jack Miller, as an employee of Keeshan-Miller Enterprises Corp., was the individual producer of this program. (84 In October 1957, Robert Keeshan was the actor who portrayed the character of Captain Kangaroo on that program. (76, 101)

9. On October 12, 1957, defendants broadcast a television image of plaintiff's pig puppet (Ex. 5) and of plaintiff's rooster puppet (Ex. 6) on the Captain Kangaroo program for approximately 35 seconds. No express permission was given by plaintiff to defendants to use the puppets. (7, 8; kinescope recording, Ex. 7) A kinescope or film recording of the program was made by CBS (Ex. 7) but never used for any commercial purpose. (6, 7) In October 1957, kinescope or film recordings constituted the only means of making copies of live television broadcasts. (127, 128)

10. On the October 12, 1957 program, as shown in Exhibit 7, the pig hand puppet and the rooster hand puppet were manipulated as hand puppets with the accompaniment of a barn dance recording, which was subordinate and incidental to the principal action of Captain Kangaroo and of a Mr. Green Jeans, a rural character, demonstrating a certain musical invention. (Ex. 7) The puppets were not featured as the principal objects of attention.

11. No testimony by Mrs. Hinrichsen was of any probative value with respect to any alleged display by defendants of plaintiff's puppets. (8–23)

Plaintiff's own testimony as to electronic reproduction of her puppets on CBS on any other date appears to be confined to a program on October 23, 1957. (29, 47, 48, 56, 59, 60) Her knowledge was limited to a recollection that Captain Kangaroo was "having a conversation with a mouse, and it was somehow related to the sewing machine" (39) and that the mouse was on the screen for several minutes. (56–59) Plaintiff took some pictures and presented enlargements thereof. (Exs. 8A–8I) Although the mouse hand puppet was exhibited on that program, neither from the testimony of plaintiff nor from her pictures is this court able to determine with more exactness what use defendants made of the plaintiff's puppet on October 23, 1957.

12. The Captain Kangaroo program in October 1957 was and now is a variety program produced for children with elements of music, comedy, education, information and entertainment. (104) The program extensively used at least two puppets, to wit, Bunny Rabbit (Ex. C) and Mr. Moose, which were continuing characters on the program. (106, 107–108, 111)

13. Any use of plaintiff's puppets on the Captain Kangaroo program was only to portray music in an incidental manner or tell a story within the program. (107, 111; see also kinescope recording, Ex. 7)

14. The electronic image produced in live television broadcasting, such as that concerned here, is not permanent. (139) After 1/15,000 of a second plus the time for the phosphor decay, which is measured in milliseconds, the image disappears and nothing is left. (131, 138, 139) No proof of any distribution of any copy of the live television broadcast was adduced.

## DISCUSSION

■ Copyrights and the rights flowing therefrom are entirely creatures of statute and the protection given to copyrights in this country is wholly statutory. White-Smith Music Pub. Co. v. Apollo Co., 209 U.S. 1, 15, 28 S.Ct. 319, 52 L.Ed. 655 (1908); Loew's Incorporated v. Columbia Broadcasting System, 131 F. Supp. 165, 173 (D.C.1955), aff'd 239 F. 2d 532 (9th Cir. 1956), aff'd 356 U.S. 43, 78 S.Ct. 667, 2 L.Ed.2d 583, reh. den. 356 U.S. 934, 78 S.Ct. 770, 2 L.Ed. 2d 764 (1958).

The rights accorded the plaintiff as the owner of a copyrighted "work of art" include "the exclusive right: (a) To print, reprint, publish, copy, and vend the copyrighted work * * *." 17 U.S.C. § 1.

In this action it is clear that defendants have not manufactured, sold or even used an article simulating any one of plaintiff's copyrighted puppets. Rather, the defendants used genuine puppets in a television show. The plaintiff claims this use as an infringement of her copyright.

The specific question therefore is whether that use constituted a copying. The commonly accepted definition of "a copy" appears in the old English case, West v. Francis, 5 Barn. & Ald. 743, which was cited with approval by the Supreme Court in White-Smith Music Publishing Co. v. Apollo Co., 209 U.S. 1, 17, 28 S.Ct. 319, 323, 52 L.Ed. 655 (1908): "A copy is that which comes so near to the original as to give to every person seeing it the idea created by the original." Certainly no three dimensional objects were reproduced. Was the presentation on the television program, by an image reproduction of a transitory and impermanent nature, a copying of the puppets? (See Finding No. 14) Weil, author of American Copyright Law, well stated:

"It would seem that a copy involves the conception that it must have some degree of permanency or the maxim de minimis would apply. Thus, while the making of a single copy may be infringement, if this copy were destroyed almost as soon as made, as, for example, if a vaudeville artist drew with colored chalks, or if a verse were cast upon a screen through a stereopticon, it may be

doubted whether such a temporary production could fairly be called a copy." (p. 406)

■ It is obvious that a copyright of a work of art may be infringed by reproduction of the *object* itself. Home Art Inc. v. Glensder Textile Corp., 81 F.Supp. 551 (S.D.N.Y.1948) (oil painting reproduced in scarf); Leigh v. Gerber, 86 F.Supp. 320 (S.D.N.Y.1949) (painting reproduced by publication without consent in a magazine). Tiffany Productions, Inc. v. Dewing, 50 F.2d 911 (D.Md. 1931) (projection of photoplay on screen without copyright owner's permission). See also Patterson v. Century Productions, Inc., 93 F.2d 489 (2d Cir. 1937). This, however, is not the nature of the "copying" here alleged. Here the puppets were not reproduced.

■ The evanescent reproduction of a hand puppet on a television screen or on the projected kinescope recording of it is so different in nature from the copyrighted hand puppet that I conclude it is not a copy. I find no violation of plaintiff's copyright here under the circumstances of this case. There was no copying of the copyrighted puppets.

■ Nevertheless, even if we were to assume that the projection on television of the hand puppets was an infringement, the defense of fair use is applicable. Fair use is at best a "troublesome question." MacDonald v. Du Maurier, 144 F.2d 696, 701 (2d Cir. 1944). Every case depends on its own facts. Cohen, Fair Use in the Law of Copyright, in ASCAP Copyright Law Symposium 43, 53 (1955).

The puppets were sold by plaintiff without any contractual limitations as to use. See Buck v. Swanson, 33 F.Supp. 377, 387 (D.Neb.1939). The use complained of here was of the type for which the puppets were intended and was reasonable. It can hardly be contended, for example, that if a copyright owner of a film sells the film without a stipulated condition as to its use that the purchaser is forbidden to *exhibit* the film merely because it is copyrighted. See Westway

Theatre v. Twentieth Century-Fox F. Corp., 30 F.Supp. 830 (D.Md.1940), aff'd 113 F.2d 932 (4th Cir. 1940).

■ Commentators agree that among the most important factors bearing on whether a use is a fair one, perhaps *the* most important, is whether the use tends to interfere with the sale of the copyrighted article. Nimmer, Copyright § 145 at 646 (1963); Latman, Howell's Copyright Law 152 (rev. ed. 1962); Cohen, supra at 62 and cases cited therein. Here, if anything, the exhibition on television would stimulate sales of the hand puppets rather than prejudice them. Further, the "copies" complained of here could not be used as a substitute for the original work. Shapiro, Bernstein & Co., Inc. v. P. F. Collier & Son, Co., 26 U.S.P.I. 40, 43 (S.D.N.Y.1943). In addition, these hand puppets were not the principal attraction on the television programs. Rather, their use was incidental. See Karll v. Curtis Publishing Co., 39 F.Supp. 836 (E.D.Wis.1941). Nor can any intent to pirate be found here. Broadway Music Corp. v. F–R Pub. Corp., 31 F.Supp. 817, 818 (S.D. N.Y.1940).

■ I conclude that the use of the hand puppets on the Captain Kangaroo Show was fair.

In view of the preceding discussion it is unnecessary to consider the other defenses raised by the defendants.

### CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and of the matters involved in this action.

2. The defendants by the performance on the Captain Kangaroo programs did not infringe upon the copyright of plaintiff on the mouse hand puppet (Ex. 4), the pig hand puppet (Ex. 5) or the rooster hand puppet (Ex. 6).

3. The use of the copyrighted puppets on the October 12 and 23, 1957 programs was fair.

4. Judgment is granted for the defendants dismissing the complaint on the merits and with prejudice and with costs.

Settle judgment on notice.