ELSMERE MUSIC, INC., Plaintiff,

v.

NATIONAL BROADCASTING COMPANY, INC., Defendant.

No. 79 Civ. 0620(GLG).

United States District Court, S. D. New York.

Jan. 9, 1980.

Siegert & Miller, New York City, for plaintiff; Paul W. Siegert, New York City, of counsel.

Coudert Brothers, New York City, for defendant; Carleton G. Eldridge, Jr., Pamela G. Ostrager, R. David Jacobs, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

In the dark days of 1977, when the City of New York teetered on the brink of bankruptcy and its name had become synonymous with sin, there came forth upon the land a message of hope. On the television screens of America there appeared the image of a top-hatted Broadway showgirl, backed by an advancing phalanx of dancers, chanting:

"I–I–I–I–I–I Love New Yo-o-o-o-o-o-rk!"

Repeated again and again (to musical accompaniment), with increasing intensity throughout the commercial, this slogan was to become the theme for an extensive series of advertisements that were to bring the nation assurances from the stars of Broadway, ranging from Dracula to the Cowardly Lion, that all was well, and that they too *loved* New York.

As an ad campaign for an ailing city, it was an unparalleled success.[1] Crucial to the campaign was the brief but exhilarating musical theme written by Steve Karmen who had previously authored a number of highly successful commercial jingles, including "You Can Take Salem Out of the Country" and "Weekends Were Made for Michelob." While the "I Love New York" song was written for the New York State Department of Commerce, its initial use and identity focused on New York City.[2]

The success of this campaign did not go unnoticed in the entertainment world. On May 20, 1978, the popular weekly variety program "Saturday Night Live" ("SNL") performed a comedy sketch over defendant National Broadcasting Company's network.[3] In this sketch the cast of SNL, portraying the mayor and the members of the Chamber of Commerce of the biblical city of Sodom, are seen discussing Sodom's poor public image with out of towners, and the effect this was having on the tourist trade. In an attempt to recast the City's image in a more positive light, a new advertising campaign emphasizing the less sensational aspects of Sodom nightlife is unveiled. As the highlight of this campaign the song "I Love Sodom" is sung *a cappella* by a chorus line of three SNL regulars to the tune of "I Love New York," with the words "I Love Sodom" repeated three times.[4]

The plaintiff, Elsmere Music, Inc., the copyright proprietor of "I Love New York,"

---

1. It was the product of the Wells, Rich, Greene, Inc. agency.

2. So Broadway-oriented were the ads that the promotion for the theaters "Tony" awards used the musical selection as a means of "stimulating the New York flavor so accurately reflected" on the Broadway stage.

3. The program was rebroadcast by video tape, on August 12, 1978. The Court has viewed the video tape.

4. The phrase was repeated a fourth time during the fade-out of the sketch.

did not see the humor of the sketch. It sued for copyright infringement.[5]

The parties have now, pursuant to Fed.R. Civ.P. 56(b), cross moved for summary judgment. As no dispute exists as to the facts giving rise to this action, but only as to the legal consequences, the Court believes this case to be appropriate for summary disposition. *See SEC v. Research Automation Corp.*, 585 F.2d 31 (2d Cir. 1978).

■ The defendant admits that its sketch and song were intended to resemble the original "I Love New York" advertising campaign and jingle. It claims, however, that the use made of the plaintiff's melody was no more than was necessary to create an effective parody, and that as such was, at worst, a *de minimis* infringement. Alternatively, the defendant asserts that, even if the infringement was more than *de minimis*, it still did not constitute an actionable copyright violation since such use was permitted as a fair use under section 101 of the 1976 Copyright Act, 17 U.S.C. § 107.

The plaintiff contests these assertions. It contends that the use made was not *de minimis*, and in fact was far more extensive than was necessary to conjure up the original. In addition, it claims that the singing of "I Love Sodom" did not constitute a fair use since it was part of a sketch that parodied New York City and the problems it was having, rather than one parodying New York State, its advertising campaign, or the song "I Love New York" itself.

In its entirety, the original song "I Love New York" is composed of a 45 word lyric and 100 measures. Of this only four notes,

D C D E (in that sequence), and the words "I Love" were taken and used in the SNL sketch (although they were repeated 3 or 4 times). As a result, the defendant now argues that the use it made was insufficient to constitute copyright infringement.

This Court does not agree. Although it is clear that, on its face, the taking involved in this action is relatively slight, on closer examination it becomes apparent that this portion of the piece, the musical phrase that the lyrics "I Love New York" accompany, is the heart of the composition.[6] Use of such a significant (albeit less than extensive) portion of the composition is far more than merely a *de minimis* taking.[7] *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir.), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936); *Life Music, Inc. v. Wonderland Music Co.*, 241 F.Supp. 653 (S.D.N.Y.1965). The tune of "I Love Sodom" is easily recognizable as "having been appropriated from the copyrighted work," *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966); *Fleischer Studios, Inc. v. Ralph A. Freundlich Inc.*, 73 F.2d 276, 278 (2d Cir. 1934), and is a taking of a substantial nature. *See H. C. Wainwright & Co. v. Wall Street Transcript Corp.*, 418 F.Supp. 620 (S.D.N.Y.1976). Accordingly, such taking is capable of rising to the level of a copyright infringement.

■■ Having so determined, the Court must next address the question of whether the defendant's copying of the plaintiff's jingle constituted a fair use which would exempt it from liability under the Copy-

---

**5.** In its complaint the plaintiff alleged unfair competition and defamation in addition to its claim of copyright infringement. It apparently, however, has chosen not to pursue these grounds in opposing the defendant's motion for summary judgment. Accordingly, this Court need not reach these issues in deciding the instant motions.

**6.** It is this musical phrase, for example, that is constantly repeated during the course of most of the "I Love New York" campaign's television commercials and serves as the musical theme for such commercials.

**7.** In this regard the instant situation is far different than those presented in the cases cited

by the defendant, where only minimal uses were involved. *See, e. g., Hoehling v. Universal City Studios, Inc.*, No. 76 Civ. 4269 (S.D. N.Y. Aug. 1, 1979) (three relatively minor similarities between the plaintiff's book and the defendant's movie found to be a *de minimis* similarity); *Mura v. Columbia Broadcasting System, Inc.*, 245 F.Supp. 587 (S.D.N.Y.1965) (brief reproduction of the plaintiff's hand puppets on the defendant's "Captain Kangaroo" television program found insufficient to constitute infringement); *see also Rokeach v. Avco Embassy Pictures Corp.*, 197 U.S.P.Q. 155 (S.D. N.Y.1978).

right Act. Fair use has been defined as "a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner of the copyright." H. Ball, *The Law of Copyright and Literary Property* 260 (1944). *See Meeropol v. Nizer*, 560 F.2d 1061, 1068 (2d Cir. 1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978); *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). The determination of whether a use constitutes a fair use or is a copyright infringement requires an examination of the facts in each case. *Meeropol v. Nizer, supra*, 560 F.2d at 1068. To assist in making this determination, section 101 of the 1976 Copyright Act, 17 U.S.C. § 107, sets forth several criteria to be considered: "(1) the purpose and character of the use . . . ; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." [8]

■ The defendant asserts that the purpose and nature of its copying of "I Love New York" was parody, and that its copying was thus a fair use of the song. It has been held that an author is entitled to more extensive use of another's copyrighted work in creating a parody than in creating other fictional or dramatic works, *Columbia Pictures Corp. v. National Broadcasting Co.*, 137 F.Supp. 348, 354 (S.D.Cal.1955), since "short of . . . [a] complete identity of content, the disparity of functions between a serious work, and a satire based upon it, may justify the defense of fair use even where substantial similarity exists." 3 M. Nimmer, *Nimmer on Copyright* § 13.05[C], at 13–60–61 (1979).

In the leading case of *Berlin v. E. C. Publications, Inc.*, 329 F.2d 541 (2d Cir. 1964), the court was faced with deciding whether certain parody lyrics printed in *Mad Magazine*, intended to comment humorously upon the "idiotic" world of that time, and designed to be sung to the tunes of various popular songs, infringed upon the copyrights of those songs.[9] Noting that "as a general proposition, . . . parody and satire *are* deserving of substantial freedom," the court held that, as the defendants had taken no more of the original songs than was necessary to "recall or 'conjure up'" the object of his satire," and as the parody had "neither the intent nor the effect of fulfilling the demand for the original," no infringement had taken place. *Id.* at 545. *See Columbia Pictures Corp. v. National Broadcasting Co., supra.* *See generally* Light, *Parody, Burlesque, and the Economic Rationale for Copyright*, 11 Conn.L.Rev. 615 (1979).

The song "I Love Sodom," as well as the sketch of which it was a part, was clearly an attempt by the writers and cast of SNL to satirize the way in which New York City has attempted to improve its somewhat tarnished image through the use of a slick advertising campaign. As such, the defendant's copying of the song "I Love New York" seems to come within the definition of parody. The plaintiff, however, relying upon *MCA, Inc. v. Wilson*, 425 F.Supp. 443 (S.D.N.Y.1976), and *Walt Disney Productions v. Mature Pictures Corp.*, 389 F.Supp. 1397 (S.D.N.Y.1975), contends that, while the sketch may have parodied New York City and its problems, it had nothing to do with, and did not parody, either New York State and its "I Love New York" advertising campaign or the song "I Love New York" itself. As a result, the plaintiff asserts that the copying of its song constituted an infringement upon it and not a fair use.

---

8. These criteria, and the statutory fair use exception in general, were intended by Congress to codify, and not supplant, the common law doctrine of fair use. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 66, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5659, 5680.

9. Among the songs that were the subjects of this parody were, "The Last Time I Saw Paris," which was reproduced as "The First Time I Saw [Roger] Maris," and "A Pretty Girl is Like a Melody," which was transformed into "Louella Schwartz Describes Her Malady."

In *MCA, Inc. v. Wilson, supra,* the court was presented with the question of whether the song "Cunnilingus Champion of Company C" as used in the play "Let My People Come—A Sexual Musical" infringed upon the copyright of the song "Boogie Woogie Bugle Boy of Company B." Finding that the defendant's song, although it "may have sought to parody life, or more particularly sexual mores and taboos," did not attempt to parody or "comment ludicrously upon Bugle Boy" itself, the court held that there had been no fair use and that as a result the plaintiff's copyright had been infringed. *Id.* at 453–54. Similarly, in *Walt Disney Productions v. Mature Pictures Corp., supra,* 389 F.Supp. at 1398, the court held that, while the defendants may have been seeking in their display of bestiality to parody life, they did not parody the Mickey Mouse March but sought only to improperly use the copyrighted material. In neither of these cases did the infringed upon musical piece relate, in any respect, to the subject that was being parodied.

The plaintiff asserts that, as the defendants did not attempt to parody the song "I Love New York" itself, the singing of "I Love Sodom" did not, under *MCA* or *Walt Disney,* constitute a fair use. We cannot agree. The song "I Love Sodom" in the sketch was intended to symbolize a catchy, upbeat tune that would divert a potential tourist's attention from the town's reputation for gambling, gluttony, idol worshipping, and, of course, sodomy. The song was as much a parody of the song "I Love New York,"—a catchy, upbeat tune intended to alter a potential tourist's perceptions of New York—as it was of the overall "I Love New York" advertising campaign.

In addition, even if it were found that "I Love Sodom" did not parody the plaintiff's song itself, that finding would not preclude a finding of fair use. Under the holding of *Berlin v. E. C. Publications, Inc., supra,* and the criteria set down in section 101 of the 1976 Copyright Act, 17 U.S.C. § 107, the issue to be resolved by a court is whether the use in question is a valid satire or parody,[10] and not whether it is a parody of the copied song itself.[11] To the extent that either *MCA* or *Walt Disney* can be read to require that there be an identity between the song copied and the subject of the parody, this Court disagrees.

Similarly, the Court does not accept the plaintiff's contention that, because "I Love Sodom" and the sketch of which it was a part related to the city and not the state of New York, they did not constitute a valid parody of the "I Love New York" advertising campaign. Although "I Love New York" may originally have been commissioned by the state, and may continue to be utilized as the theme for the state advertising campaign, the manner in which the song has been used has also served to create a strong identification between the song and the City of New York.[12] The extensive use of the "I Love New York" jingle and theme in connection with many advertisements (in both the print and electronic media) relating exclusively to New York City, has made the song as much the anthem of the city as of the state.[13] As a result, the Court believes that this campaign and song, which have been used, at least in substantial part, to sell the city, are an appropriate target of parody with regard to the City of New York. *See Rosemont Enterprises, Inc.*

**10.** *See* Kadden, *Copyright Law,* 1978 Ann.Survey Am.L. 593, 620–21.

**11.** Thus, in *Berlin v. E. C. Publications, Inc., supra,* the song "The First Time I Saw Maris," for example, was found to be part of a valid parody even though substantively it had nothing to do with "The Last Time I Saw Paris," from which its melody was copied.

**12.** To a certain extent, this result may be the inevitable consequence of the city and state having the same name.

**13.** This identification with the city has been furthered by promotions such as the "I Love New York Show Tours," which relate solely to New York City. Advertisements for these tours have saturated the television airwaves and continue to do so (with a new series of commercials having only recently been released).

*v. Random House, Inc.*, 366 F.2d 303, 309 (2d Cir. 1966); *Time Inc. v. Bernard Geis Associates*, 293 F.Supp. 130 (S.D.N.Y.1968).

 Having found that the SNL sketch and song validly parodied the plaintiff's jingle and the "I Love New York" advertising campaign in general, the Court next turns to the important question of whether such use has tended to interfere with the marketability of the copyrighted work. *See Meeropol v. Nizer, supra*, 560 F.2d at 1070; *Mura v. Columbia Broadcasting System, Inc.*, 245 F.Supp. 587, 590 (S.D.N.Y.1965). In this regard, it is clear to the Court that the defendant's playing of the song "I Love Sodom" has not so interfered. The song has not affected the value of the copyrighted work. Neither has it had—nor could it have—the "effect of fulfilling the demand for the original." *Berlin v. E. C. Publications, Inc., supra*, 329 F.2d at 545. Just as imitation may be the sincerest form of flattery, parody is an acknowledgment of the importance of the thing parodied. In short, the defendant's version of the jingle has not in the least competed with or detracted from plaintiff's work.

 We turn finally to the extent of the use. The plaintiff argues that, as a result of the multiple repetition of the phrase "I Love Sodom" at the end of the SNL sketch, the defendant has appropriated more of the plaintiff's work than was necessary to "conjure up" the original. The Court does not agree. In the "I Love New York" television advertisements, and particularly in the "show tour" commercials, which relate specifically to the city, the phrase "I Love New York" is repeated to musical accompaniment continuously throughout. Thus, while a single recital of "I Love Sodom" might have alerted a viewer of the sketch as to the target of the parody, the repetition of the phrase served not only to insure that its viewers were so alerted, but also to parody the form of these frequently broadcast advertisements themselves. As a result, the repetition furthered the overall satirical effect. In addition, the Court believes that the repetition of the phrase, sung *a capella* and lasting for only eighteen seconds, can-

not be said to be clearly more than was necessary to "conjure up" the original. Nor was it so substantial a taking as to preclude this use from being a fair one.

Basing its decision on undisputed facts presented by the parties, as well as on a videotaped viewing of the television sketch containing the alleged infringement, the Court finds that the defendant's use of the plaintiff's jingle in the SNL sketch was a fair use, and that as a result no copyright violation occurred. Accordingly, the plaintiff's motion for summary judgment is denied, and the defendant's motion for summary judgment is granted. This action is hereby dismissed.

SO ORDERED.