Frances **LAMPERT**, Plaintiff,

v.

**HOLLIS MUSIC**, Inc., Ted Straeter, Radio Corporation of America, R. C. A. Victor Division, Columbia Records, Inc., Arpege, Eddie Constantine, Dinah Shore, Edith Piaf and John Warrington, Defendants.

Civ. No. 12384.

United States District Court
E. D. New York.

Feb. 20, 1956.

See also, 122 F.Supp. 557.

Otto Friedman, Jamaica, N. Y., for plaintiff, by Jerome I. Hyman, New York City, of counsel.

Hofheimer, Gartlir & Hofheimer, New York City, for Hollis Music, Inc., Radio Corp. of America (R. C. A.–Victor Division), and Columbia Records, Inc.,

by Bernard Gartlir, New York City, of counsel.

I. Robert Broder, New York City, for Edith Piaf.

L. Arnold Weissberger, New York City, for Ted Straeter, by Fred Gelosky, Brooklyn, N. Y., of counsel.

Martin J. Machat, New York City, for John Warrington.

BYERS, District Judge.

This is a copyright cause in which the plaintiff who composed and wrote the words of the song now called "Annabella" alleges infringement by some or all of the defendants in that the song "'Cause I Love You" was composed, published and reproduced in alleged violation of the plaintiff's copyright. The accused song was composed by the defendant Piaf as to the music, while the words were written by one Constantine.

The action was begun by the filing of a complaint on January 17, 1952. Thereafter numerous procedural steps were taken which need not be now recited. A second amended complaint was filed December 17, 1954 which contains three alleged causes of action, and in which judgment is demanded:

(1) That the name or title used in connection with the musical compositions "'Cause I Love You" and "That's Amoré" be adjudged and decreed to be the property of the plaintiff, and that the defendants be enjoined from using either.

(2) That they be enjoined from advertising, playing, producing or exhibiting the same.

(3) That an alleged attempted grant or license by Hollis and Arpege to Straeter and various other defendants be adjudged void.

(4 and 5) That an accounting be ordered;

(6) That the defendants be ordered and decreed to pay $250 for each infringement of the plaintiff's song.

The surviving parties defendant at the time of the trial are listed above, although originally many more were joined. The named defendants Constantine, Dinah Shore and Arpege were not served.

That which emerges from the testimony at the trial is the following:

(a) There was no evidence whatever offered concerning the song, "That's Amoré."

(b) There was no evidence to connect the recording companies named as defendants with any conduct alleged to constitute infringement.

(c) The controversy comes down to the two questions of similarity as to words and music on the part of the plaintiff's composition "Annabella" with the song "'Cause I Love You"; and whether access—assuming similarity to exist —has been shown.

The subject matter does not involve any important contribution to the arts of music or versification, and such discussion as may seem to be requisite may appropriately appear by way of comment touching certain of the following:

### Findings of Fact

1. The plaintiff conceived the sequence of notes embodied in her song "Lucky" and also wrote the words, prior to March 21, 1949, on which date she procured a U. S. copyright certificate thereof as an unpublished composition.

2. On or about March 9, 1950 plaintiff again copyrighted the same composition under the name, "Annabella."

3. The plaintiff plays the piano by ear but cannot read notes.

4. The plaintiff first imparted the tune as so conceived to one Kurt Rogers who wrote down the music for plaintiff on music paper.

5. The evidence does not disclose whether the music so written also contained the words of the song as the plaintiff wrote them on a paper which has been lost.

6. The plaintiff never published or caused to be published the song "Lucky."

7. The subject of the second copyright referred to in Finding 2 is an arrangement of the plaintiff's song prepared for her by the defendant John Warrington, which contains not only the music but the words of her song arranged in connection with the notes to which they apply.

8. The plaintiff's song "Annabella" was never published in printed form.

9. That song was played publicly with the plaintiff's permission in the Club Vasques, Middletown, Connecticut, about twenty times during the year 1950; the exact time does not appear. It was likewise played publicly during the same year in East Hartford, Connecticut, in a night club known as the Elm, about two or three times.

10. During the month of January, 1951, the plaintiff put into the hands of the defendant Straeter a copy of her said song at a time when he was conducting a band at the Capitol Theatre, New York; also three other songs of her composition, not involved in this litigation.

11. Plaintiff asked Straeter to look at all of them and give his opinion of them and "see what he could do."

12. The defendant Straeter did not return the song "Annabella" or any of the others to the plaintiff although she in time requested him so to do.

13. At the time defendant Straeter told plaintiff, in response to her request for the return of the music which she had left with him, that he had sent the song "Annabella" to M-G-M for recording.

14. That statement was untrue and instead of sending "Annabella" and the other songs to any company for recording, the defendant Straeter merely threw them away.

15. The said untrue statement was resorted to, to relieve Straeter of expressing an unfavorable opinion of "Annabella" and the other songs.

Comment:

The plaintiff argues that Straeter's testimony was not convincing either in rendition or content, but agreement with that contention does not result from a reading of the record. He was a total stranger to the plaintiff and it was somewhat of an imposition upon him for her to seek him out and ask for his approval of her efforts; the plaintiff suggests that he was a channel of access on the part of the defendant Hollis, but there is indeed no evidence to buttress that assertion. Richmond was the general manager of Hollis and testified that he had no personal acquaintance or business association with Straeter at any time, and no reason is seen for discrediting that statement.

Straeter was a band leader and it would have been to his interest to promote and exploit a new and attractive musical number for his band to play; this would account for the brief inspection which he says he made of the plaintiff's song but which was negative in result. That being so, it would have been natural for him to discard the sheets as stated, although it would have been more gracious if he had retained them in his possession long enough to return them to her when she made her request to that effect. None of which would justify the court in refusing to accept and rely upon his testimony.

16. Straeter was not a channel of access of the plaintiff's said song, to any defendant in this case.

17. The defendant Piaf, a native of France, conceived the song "Du Matin jusqu 'au Soir" (From Morn 'til Night, or All Day Long) during the month of March, 1950, while living in Paris where she was performing as a singer in public.

18. Under date of July 21, 1950, the defendant Piaf assigned that and three other songs (of which she had written the words as to two, and the words and music as to one) to Arpege, a French corporation named as a defendant but not served with process.

19. A literal translation of the words of "Du Matin jusqu 'au Soir" was requested by the court at this trial and filed with the brief of the defendant Piaf; it is deemed to be in evidence as though offered at the trial.

20. That song was duly copyrighted in France on August 10, 1951.

21. The lapse of time between the said assignment and the date of the copyright, is adequately explained in the testimony that the song was not to be performed in public except in connection with a theatrical production which was staged in Paris during the year 1951.

22. The defendant Piaf, having come to the United States, brought her said song to the attention of the defendant Hollis in the person of Mr. Richmond during the month of October, 1950 at one or more interviews at which Eddie Constantine was present.

23. The said Constantine undertook to prepare a translation of the words of the said song if the tune thereof should commend itself to Hollis for publication.

24. Richmond was favorably impressed by the French song and its rendition by the defendant Piaf and ordered a translation of the words, and arranged for the publication in the United States of the song in English.

25. The said Constantine thereupon prepared the verse or the lyrics in a purported English translation of the French version, and in that process Richmond participated. The title given to the song in its English version was " 'Cause I Love You."

26. The said song " 'Cause I Love You" was duly copyrighted in the United States by the defendant Hollis, as an unpublished composition under date of January 19, 1951, and later when published by Hollis, under date of April 13, 1951.

27. Thereafter the said song " 'Cause I Love You" was recorded by R. C. A. and Columbia Records, the defendants above-named. A printed version was published and sold by the defendant Hollis.

28. The venture was a losing one for the defendant Hollis in that its out-of-pocket expenses exceeded the financial returns by over $6,000.

29. It is only the chorus of each of the two songs that is involved in this controversy.

30. The plaintiff's song as to the chorus, purports to ascribe several attractive qualities to Annabella, which indicates that the song would be sung by a male person. The third grouping of lines in that chorus reads:

"It's a trance
When we dance
Such romance
In her glance
My heart is young and gay."

The accused song as to the chorus, in the second grouping of lines, reads:

"Just a glance
When we dance
And I feel in a trance
'Cause I Love you."

Obviously this song was intended to be sung by a female person.

31. The verbal similarity referred to in Finding 30 above is found to be the result of accident rather than design.

Comment:

This aspect of the controversy is the only one that has been at all difficult of resolution for the reason that the literal translation of the French song "Du Matin jusqu 'au Soir" contains no French word such as "bal" which could be translated as "dance," and the introduction of that word into the English version of the French lyric standing by itself might be difficult of explanation based upon the lines of the composition as a whole.

As opposed to that reflection, it is also true that in the literal version of the French song these words occur: "He smiles when he says 'You agitate my life' " and in the couplet is the ex-

pression: "His eyes have an air * * *."

Both of these assertions could have suggested the use of the English word "glance" which in turn, in order to make a rhyme, would bring into almost automatic adoption the words "dance" and "trance."

It is expedient to indulge in this reasoning, which may be indeed far-fetched, since there is no evidence whatever of access on the part of Hollis to the plaintiff's song.

It will be recalled that the Constantine translation was arranged for during the months of November and December 1950 and at that time the only way that the plaintiff's song could have been known to the public was through its rendition in the restricted area of Middletown and East Hartford, Connecticut, during approximately the same period of time. In order to attribute to Constantine any awareness whatever of the existence of the plaintiff's song, something—however slender—would have to be adduced to support such an inference, but on that subject the evidence is completely sterile.

■ It could be wished that Constantine had been actually brought into the case in order that his testimony could have been taken, but since process was never served upon him he is only a named party, over whom the court has not obtained jurisdiction.

32. The accused song as to its music is in the key of b-flat, and as to "Annabella" in the key of e-flat; there is a similarity in the sound of the three notes which are coupled with the words "She's so nice" in "Annabella," and with the words "All day long" in "'Cause I Love You."

33. The three notes associated with the words "She's so nice" in "Annabella" are g, f, and e-flat.

34. The three notes associated with the words "All day long" in the accused song are f, e-flat and d.

■ 35. There is a similarity in the sound of the respective three notes as played and sung in both compositions, but considering the respective choruses in their entirety, the said similarity is found to be fortuitous and not the result of copying by the defendant Piaf of the plaintiff's song "Annabella."

Comment:

Since there are only three notes involved in the sequences which are common to the two songs, it cannot be said that there is a sufficiency of musical concept in either to rise to the dignity of motif. There was no quality of true musical composition involved in so slender a contribution to what might have eventually developed into a melody if carried far enough forward to support such a definition.

In other words, coincidence of concept could well account for this three note sequence of tones, three times rendered in "Annabella" and five times in "'Cause I Love You."

The expert Barlow testified (without contradiction) that such a sequence is to be found in the well-known round "Three Blind Mice," and also in the composition called "Largo al Factotum" from the "Barber of Seville." He said:

"There is an aria for baritone there, and at the point where the artist repeats the phrase 'Figaro' many times, he uses the same exact notes as appear in 'Annabella'."

The musical similarity between these two songs would be by no means sufficient to dispense with the requirement of proof of access if the plaintiff were to prevail, in view of the remoteness of the defendant Piaf from the plaintiff in the physical sense at the time that the former composed her French song, and the extreme unlikeliness that she could have been aware of the plaintiff's composition which was not publicly sung in the United States at least until the year 1950 and almost surely after the defendant Piaf had assigned her rights to her own composition in July of 1950 as above recited.

■ 36. Such similarity as exists between the song "Annabella" and the song "'Cause I Love You" is insufficient

to dispense with proof of access in order to spell out a cause of copyright infringement.

37. Access on the part of the defendants Hollis Music, Inc., Radio Corporation of America, Columbia Records, Inc. and Edith Piaf to plaintiff's song "Annabella" has entirely failed of proof.

38. Access on the part of the defendant Warrington to the plaintiff's song "Annabella" has been shown, but the proof fails to establish that he was in turn a channel of access to any of the defendants named in the last finding.

### Comment:

The fact that Warrington arranged the musical score of plaintiff's song containing the words of the chorus is sufficiently proven by plaintiff's Exhibit 3, and is verified by his own testimony.

Evidence is wholly lacking however that he imparted directly or indirectly that which the plaintiff had submitted to him and paid him to arrange, to the defendant Hollis or any other defendant in the case.

The testimony of Warrington and of Richmond is clear, unequivocal and convincing in this respect, and is accepted.

Much is said in the plaintiff's brief reflecting upon the ethical standards of Tin-Pan Alley, which is seemingly a recognized metropolitan area in which musical products of dubious intrinsic merit are exploited, without pointing to one piece of tangible evidence of what this branch of the law means when it speaks of access.

### Conclusion of Law

1. The complaint is dismissed on the merits, with costs, and the following allowance of counsel fees is awarded as a matter of discretion in view of the multiplicity of procedural activities, including a plaintiff's motion for the appointment of a receiver of Hollis, that intervened between the start of the action and its coming to trial:

To the attorney for Hollis Music, Inc. $250.00

To the attorney for Edith Piaf . . $100.00.

The decision of this cause has been reached after careful consideration of the following cases, among others: Darrell v. Joe Morris Music Co., 2 Cir., 113 F.2d 80; Arnstein v. Porter, 2 Cir., 154 F.2d 464; Heim v. Universal, etc., 2 Cir., 154 F.2d 480; Northern Music Corp. v. King Record Distributing Co., D.C., 105 F.Supp. 393.

Settle decree.