**NORTHERN MUSIC CORP. v. KING
RECORD DISTRIBUTING
CO. et al.**

United States District Court
S. D. New York.

May 22, 1952.

Supplemental Opinion June 25, 1952.

Cohen & Bingham, New York City, Henry Cohen, Richard E. Colby, New York City, of counsel, for plaintiff.

Jack Pearl, New York City, for defendants King Record Distributing. Co., Lois Music Publishing Co., Keys Music, Inc., Radio Corp. of America, Mercury Record Corp., DeLuxe Record Co., Broadcast Music, Inc. and Sally Nix.

. J. Robert Rubin, New York City, for defendant Loew's Inc.

Jacob G. Zaks, New York City, for defendant Lucky Millinder.

Sprague & Peck, New York City, Jack Pearl, Stuart Sprague, New York City, for defendant Henry B. Glover.

RYAN, District Judge.

This suit was filed by Northern Music Corporation, the assignee of the copyright issued on the musical composition Tonight He Sailed Again. It involves a claim of infringement arising from the recording and publication of an infringing musical composition, entitled I Love You, Yes I Do. The defendants are charged with infringing plaintiff's copyrighted composition by manufacturing, distributing or selling phonograph records, or by publishing and selling sheet music, or by licensing for radio or television broadcast the alleged infringing composition.

Both compositions—Tonight He Sailed. Again and I Love You, Yes I Do—are described as "popular" music; both were published with lyrics. No infringement is claimed as to the lyrics.

We think it best at the outset to set forth the various corporations and individuals that are involved in this suit:

Northern Music Corporation, a New York corporation, the plaintiff, is a subsidiary of Decca Records. Inc. It publishes sheet music of songs recorded by Decca. It is the assignee of the rights in the musical composition entitled Tonight He Sailed Again, and is the proprietor of the copyright.

Guy B. Wood, one of plaintiff's assignors, is the primary composer of the music of plaintiff's composition Tonight He Sailed Again. He is the author of several other compositions.

Sol Marcus is a songwriter, who collaborated with Wood in the final preparation of plaintiff's composition. He is another of plaintiff's assignors. .

Edward Seiler, the author of the lyrics, is the third of plaintiff's assignors. .

Lucius Leroy Millinder (Lucky Millinder), an orchestra leader, made Decca's record of plaintiff's song and supervised the recording of the infringing record made by King Records Distributing Company. The group which made the infringing record were members of the Millinder orchestra.

Ben (Bull Moose) Jackson was a saxophonist in Millinder's orchestra and under his management. He was in the group which made the infringing record. He is not named as a defendant.

Sally Nix is alleged to have participated in the writing of the lyrics of the infringing song. She was friendly with Millinder and in his employ.

Henry B. Glover, who it is claimed wrote the music of the infringing song, is an arranger for Millinder. He was at times a trumpeter in Millinder's orchestra.

King Records Distributing Company, an Ohio corporation, manufactures and distributes phonograph records. It manufactured and distributed the first infringing record entitled—I Love You, Yes I Do.

Lois Music Publishing Co., an Ohio corporation wholly owned by King Record, is in the business of publishing and selling

sheet music. It published and sold the infringing sheet music.

Keys Music, Inc., a New York corporation, distributes sheet music. It is general agent for Lois.

Radio Corporation of America, Mercury Corporation, and Loew's incorporated are Delaware corporations. All of them manufacture records, and manufactured infringing records.

Broadcast Music, Inc. (BMI), a New York corporation, licenses performances of copyrighted music. It infringed plaintiff's copyright by purporting to license broadcasting stations and others to perform the infringing composition.

At the conclusion of the trial, we stated that we were left with the impression of similarity between the two compositions —Tonight He Sailed Again and I Love You, Yes I Do, and of access by the authors of I Love You, Yes I Do to the composition Tonight He Sailed Again. We expressed no finding on the issue of whether plaintiff's composition possessed the originality required by law to entitle it to copyright protection. Now, after consideration of the entire record, we find our impressions as to similarity and access are confirmed, and we find that plaintiff's composition is sufficiently original to qualify it to copyright. We have based this upon the following

## Findings of Fact

The music of plaintiff's song—Tonight He Sailed Again—was put into written form by Wood about the end of 1942. At the time he entered the musical notations in a scrapbook (Ex. 1); only the first two measures of the theme so recorded were retained in the song as published. A second version of the theme prepared in June, 1943 (Ex. 2), contained six new measures. He then began to work with Marcus and Seiler (who died early in 1952). Marcus collaborated with Wood principally on the music; Seiler, on the lyrics. Some further minor changes were made and the release was rewritten; it was then turned over to William Downer, the professional manager of the plaintiff and a contract was signed on November 21, 1944. On the

same day Wood, Marcus and Seiler executed an assignment of their rights in the music and lyrics to plaintiff. The words and music were duly filed on December 14, 1944 in the Copyright Office by plaintiff as an unpublished musical composition. The copyrighted sheet indicated only the melodic line; the published copy issued in early 1948 indicated the harmony.

We have had testimony offered by the defendants through Glover and others of the alleged origin of the infringing song.

Glover testified that he had joined Millinder's orchestra as a trumpet player and arranger in the spring of 1945 and had continued with him through October or November of that year. Prior to that and from the first part of February, 1944 until early 1945 he had worked with another orchestra (Buddy Johnson's) and he then had rehearsed another band for a few months before joining with Millinder.

But long before, while attending high school and later college, he had played in school orchestras. He has known Millinder since 1937, when he was attending high school.

Glover testified that while still in high school "about 1937, '38—somewhere in there" he wrote the melody to a tune entitled I Miss You, Yes I Do; that the tune was played professionally by the school orchestra both on and off the school grounds as an instrumental number more than as a ballad; that "it was in the form of pencilled manuscript arrangement featuring mostly the saxophones and had pencilled lead sheet with the vocal—with the lyrics—indicated on it". He testified it was written on printed pad papers used in the music classes of the school and that in 1937 at either Hot Springs or Little Rock he had given the manuscript to "Lucky" Millinder who then played it to please Glover and his family. Glover also testified that he "submitted it to Tiny Bradshaw for recording in the early part—the latter part of '46", but that between 1939 and 1946 he had only played it while at college.

Glover's original manuscript of the melody was not produced at trial. His story was that he had given it to an attor-

ney who had represented him, that the attorney died and after his death it could not be found among his papers.

It is the defendants' contention that the musical theme of I Miss You, Yes I Do so composed by Glover as a high school student was treasured by him throughout the years and is the same theme published with new lyrics in August, 1947 as I Love You, Yes I Do.

While "truth is sometimes stranger than fiction", the occasions when it is so are rare. The testimony of Glover and the witnesses offered in attempted corroboration of his testimony as to the origin of I Love You, Yes I Do, is rejected.

We come then to consider whether the two compositions are similar.

Whether the songs are similar presents a question of fact. Expert testimony has been offered by both sides. Much of it is in conflict. While it has been of some help, we rely on the only other test available to a judge, who is a musical layman, namely—whether there is a resemblance noticeable to the average hearer. Hirsch v. Paramount Pictures, Inc., D. C., 17 F.Supp. 816.

Both songs are so-called "popular music" and are described as "love ballads". We give no significance to this, however, for it is the lyrics of a song which determine whether or not it is a ballad, and here the lyrics are not claimed to have been infringed. The construction of the chorus of each is identical—thirty-two measures, with 4 separate strains of eight measures; the first eight measures give the typical melody; this is repeated identically in the second strain or the next eight measures; the third strain, or measures 17 through 24, contain the release or relief—a different melody entirely; the last strain, or measures 25 through 32, again repeat the typical melody of the first strain. Designating the typical melody of the first eight measures as "A" and the release measures as "B", and giving a letter to each strain, both songs are classified as of the AABA construction. This is a form found in many compositions of popular music; it is not unusual for a chorus to have 32 measures.

We examine now the rhythm, harmony and melody of both songs to determine whether similarity exists.

The rhythmic structure of Tonight He Sailed Again is not unique; it is similar to the rhythmic pattern of other songs, particularly Among My Souvenirs and Make Believe Island, both previously published popular songs. But, we find that the rhythmic pattern of both songs in suit is virtually identical and that the high point of the melody of each song occurs at precisely the same place. The playing of record Exhibit 25 convinces of this.

The harmonic pattern of both songs is similar. Exhibit 31, in which both songs were played simultaneously against a common harmony demonstrates this.

The experts called by the defendants gave evidence of some similarity between the two songs. Thus, Howard testified that to the untrained musical ear measures 4, 5, 6 and 7 of both songs would sound similar; Rettenberg,—that the accused song had the first four measures identical in rhythm but somewhat different in melody and the next four measures identical in melody and rhythm to plaintiff's song. In his opinion, too, to the ear of the public there is a similarity between the two songs. It was specifically conceded by the defendants that there is a similarity between the 4th and 5th measures of both songs.

While both experts called by the defendants recognize the similarity of these passages in both songs, they account for it by the fact that they are found "in well known compositions of earlier origin." We do not agree with these experts that the similarities of these four consecutive measures are not striking but are trivial and commonplace. While we are not concerned primarily with the number of measures or of notes which are similar, we find that they comprise a significant and continuous portion of the melodies of both songs.

A piracy of a song is committed if that portion which is the whole meritorious part of the song is incorporated in another song, without any material alteration in the sequence of bars. We find that this was done here.

Examination of the musical score of both songs reveals substantial melodic similarity. Exhibit 18 shows the first eight bars—or the "A" strain of both songs. Tonight He Sailed Again has 25 notes in these eight bars; I Love You, Yes I Do has 28 notes in the same bars. Comparison shows that 16 of these notes are common to both songs. This coincidence of notation is significant because it occurs at the same point in the melodies. Similarity in the melodies of both songs is impressed upon us when the first eight bars of both songs are played simultaneously so played, without harmony, we, paying special attention, detected with untrained ear but three discords.

At trial, we have had eleven specially prepared recordings introduced by the plaintiff prepared to demonstrate similarity between the two songs with respect to melody and harmony. Thus, we have had the first 16 measures of each song played consecutively on the paino without harmony (Ex. 19) and then played simultaneously (Ex. 20). We have listened to the identical notes of the two songs being played on the piano and while whistling was used to designate the different notes (Ex. 21). We have endured other strange combinations of drums and bells (Ex. 23), of temple blocks and tympany (Ex. 25). We have suffered through the playing of the commercial recordings. The defendants were not to be outdone in these endeavors. They brought forth a few records and crowned their activities by bringing a piano into court for use in cross-examining plaintiff's expert and illustrating the testimony of their own experts. We are certain this was not all done either for our entertainment or annoyance.

But, we were not confused by these cacophonous demonstrations which we endured on trial "with patience and fortitude", for two months later, in chambers, with doors shut and windows closed we selected and again played some of these recordings. We find the opinions expressed at the close of the trial confirmed.

▮▮▮ Separate works which are alike in every respect can be copyrighted without denial of anyone's rights for the copyright does not give a monopoly of ideas but the second song must be innocently and independently composed. Arnstein v. Edward B. Marks Music Corp., D.C., 11 F. Supp. 535. It is only the method or way of putting the idea into form that can be copyrighted. The plaintiff must establish not only that the ideas of both compositions and the form of expressing the ideas are similar but also that this was not mere coincidence and was accomplished with previous knowledge of the plaintiff's composition. This last, plaintiff must prove by evidence to show that plaintiff's work was completed prior to defendant's work and that there was a contact between the plaintiff's work and the defendant either through the public medium or privately. With similarity and contact established, innocent intent is dissipated. Priority of publishing of itself raises a presumption that defendant had contact. We may not hold the other song an infringement, even though similar to the song in suit, unless convinced that it was deliberately and knowingly so composed.

Tonight He Sailed Again was played by Wood for Millinder in late 1944. Millinder's testimony as to his reaction to the song was not convincing. He testified first that he was not impressed with the song's possibilities until some time in 1947. Subsequently, he testified that he had been insisting since 1944 that he wanted to record the song. Finally, he said that he had insisted since 1944 that it was a good tune. It was shown that on April 13, 1947, Millinder wrote to Downer, the recording manager of Northern Music Corp. (Pltf's Ex. 12), that he couldn't help but feel that Tonight He Sailed Again was a great tune, and that he had "slept with those lyrics many a night" and felt that the tune deserved a lyric change. He added that he would still record it on his next date in its present form. Millinder's doubts about the lyrics of the song arose from his feeling that they had a war connotation and that they were not suitable since the war had come to an end. The proof establishes that, regardless of Millinder's views as to the

lyrics of the song, he was favorably impressed with the melody from the time he first heard it in 1944.

It was also established by Glover's own testimony that he knew "Bull Moose" Jackson and that they had played together in the Millinder orchestra. Glover also testified that he has known Sally Nix, who wrote the lyrics to I Love You, Yes I Do since 1943. She has been for many years a friend and employee of Millinder's. Glover was then "peddling arrangements, songs, plugging tunes." In 1947, Glover was doing arrangements for King Records. In connection with the King recording of I Love You, Yes I Do on August 19, 1947, Glover testified that he was at the time arranging for Millinder, that Millinder sent for him and gave him "the go-ahead sign to write the arrangement for Bull Moose Jackson", and that he "got Bull Moose Jackson's key and made the arrangement without the lyric change". In September 1947, Glover participated in a recording session with Millinder and played one or two engagements with him when he augmented his band. He also played third trumpet in the Millinder orchestra on October 8, 1947 when Tonight He Sailed Again was first recorded. In February or March 1948, he made a road trip with Millinder and in the summer of that year he contracted to write the musical scores for a radio show of which Millinder was in charge.

■ Because of Millinder's familiarity with Tonight He Sailed Again and his association with all concerned in the composing and recording of I Love You, Yes I Do, we find that the similarity between the two songs was not a mere coincidence.

■ We consider now the originality of plaintiff's song. In determining whether plaintiff's composition is original, we must give consideration to the music in the public domain.

"One requisite to copyrightability is that the work be original in the sense of being the creative product of the author's own effort. There is no requirement that it be original in the sense of being novel, that is, the first of its kind in existence". Amdur Copyright Law and Practice Ed., p. 69.

Perhaps, the best test to be applied in determining originality is to inquire whether the composition is a new and different treatment of an old theme or melody or is merely a colorable attempt to use someone else's work as the composer's own.

Defendants employed and produced as a witness on trial, one who is experienced and has gained some renown as a so called "tune detective". Diligently and exhaustively, he examined musical compositions in the public domain and those the subject of prior copyright. He testified as to the result of his research and disclosed that some consecutive measures of plaintiff's song are identical with measures of compositions old in the art.

Thus, he testified that the sequence of notes in measures 5 and 6 of the Neapolitan folk song Santa Lucia is the same as in measures 4 and 5 of plaintiff's song. Plaintiff's song is written ¾ time; the notes of the song are in groups of three. Santa Lucia was written in ¾ time. Melodically there is no difference in the time because of the grouping of notes in plaintiff's song. Measures 4 and 5 of Tonight He Sailed Again have the same sequence of notes as measures 5 and 6 of Santa Lucia. There was a difference in note valuation, but the six notes of these measures in both songs are the same. This was substantially the testimony of all of the experts. The 6th and 7th bars of plaintiff's song were described as "a natural cadence", often heard. The sequence was identified as part of the composition Merrily We Roll Along.

But we find these 4th, 5th, 6th and 7th bars in plaintiff's song and the infringing song substantially similar (Ex. 18). We are left with the impression that it was not by accident or chance that these musical passages so similar are found in sequence in both songs.

So, too, we detect a similarity between the first four bars of plaintiff's verse and a sequence from the song May The Good Lord Bless And Keep You (Ex. Y), which, we are told, in turn stems from certain works of Handel. In addition, the song When You're In Love has the same tonal effect of downward scale progression as plaintiff's song; the same accented point in every al-

ternate bar; the same tune outline particularly in measures 1, 3 and 5; and a common note in the intervening pick-ups in measures 2 and 4. Like observations may be made on comparison with another song, Make Believe Island. Isolated phrases of plaintiff's song are also found in Heaven In Hawaii, September Song, If You Are But A Dream, I'll Never Let A Day Pass By and several others disinterred by this able searcher of lost and forgotten tunes. Given more time and greater incentive further explorations in the library of ancient tunes and melodies might have revealed innumerably more.

Technically analyzed, a musical composition is made up of rhythm, harmony and melody. Originality, if it exists, must be found in one of these. Rhythm is simply the tempo in which the composition is written. It is the background for the melody. There is only a limited amount of tempos; these appear to have been long since exhausted; originality of rhythm is a rarity, if not an impossibility. Harmony is the blendng of tones; this is achieved according to rules which have been known for many years. Being in the public domain for so long neither rhythm nor harmony can in itself be the subject of copyright.

It is in the melody of the composition—or the arrangement of notes or tones that originality must be found. It is the arrangement or succession of musical notes, which are the finger prints of the composition, and establish its identity.

The musical compositions of some few set their composers apart from all others. Their works are distinctly characteristic and possess an individuality which mark the work of extraordinary genius. Their music bears the imprint of their gifts; like the paintings of a master, an inspection of their compositions reveals the signature of the author. Such in popular music are the productions among others of Victor Herbert, George Gershwin, Jerome Kern and Cole Porter. The composers of Tonight He Sailed Again cannot and do not make claim to such distinction. Nor is it necessary that the composer of a popular song give evidence of such talents to entitle his work to be classified in the law of copyright as original. Distinct and individual characteristics of a composition are not necessary ingredients of originality, particularly in the field of popular music.

Without intention or design to do so, plaintiff may have incorporated musical sequences employed by others,

"But the right of the author of a musical composition is not affected by the fact that he has borrowed in general from the style of his predecessors. The collocation of notes, which constitutes the composition, becomes his own, even though strongly suggestive of what has preceded, and it ceases to be an invention, and becomes an infringement, only when the similarity is substantially a copy, so that to the ear of the average person the two melodies sound to be the same." Hein v. Harris, C.C.S.D.N.Y. 1910, 175 F. 875, 877.

We find that the plaintiff's composition is original; although the musical theme may have been expressed in part by others, the result of plaintiff's entire composition when played leaves an impression of newness or novelty sufficient to permit it to be the subject of copyright.

We find that the defendant Lois infringed plaintiff's coypright E-Unpublished 402951 by causing copies of the sheet music of the infringing musical composition I Love You, Yes I Do to be printed and by purporting to license manufacturers of phonograph records, including the other defendants, to mechanically reproduce the infringing musical composition in the form of phonograph records, and further by authorizing public performance of the infringing musical composition by owners of broadcasting stations and others who utilize performance of musical compositions for profit. Lois has continued to print and sell copies of the infringing musical composition and to authorize its further performance for profit.

We further find that the defendant Keys, general agent for the sale of sheet music published by other music publishing companies, including the defendant Lois, has infringed plaintiff's copyright by offering to sell and, by selling copies of sheet

music of the infringing musical composition and has continued to do so.

■ We find that the defendants King, Mercury, Loews, and R.C.A. infringed plaintiff's copyright by mechanically reproducing the infringing musical composition, I Love You, Yes I Do in the form of phonograph records and that they published, distributed and sold copies of those phonograph records and continue to do so.

■ And we find that the defendant Broadcast Music Inc. infringed plaintiff's copyright by purporting to license broadcasting stations and others who publicly perform musical compositions for profit, to perform the infringing musical composition I Love You, Yes I Do.

We find, too, that after due notice by the plaintiff to the defendants of the plaintiff's claim of infringement, the defendants continued to infringe upon the plaintiff's copyright as aforesaid.

Upon the foregoing findings of fact, we make the following:

## Conclusions of Law

1) Since on or about December 14, 1944, plaintiff has been owner of a valid copyright, Class E-Unpublished, 402951, in the original musical composition Tonight He Sailed Again.

2) Defendants have infringed the plaintiff's copyright of its original composition Tonight He Sailed Again.

■ 3) The plaintiff is entitled to a decree against the defendants, their agents, servants and employees, and all persons and corporations acting by, through, under or in concert with, or under the control, direction, permission, or license of defendants or any of them, in any manner whatsoever, whether directly or indirectly, permanently enjoining and restraining them and each of them from infringing plaintiff's copyright in the musical composition Tonight He Sailed Again in any manner whatsoever.

4) The plaintiff is entitled to recover from the defendants, jointly and severally, such damages as the plaintiff has sustained in consequence of defendants' infringement of plaintiff's copyright, from the first date of infringement and as long as the infringement has continued or may continue.

5) The plaintiff is entitled to an accounting of all the gains, profits, emoluments and advantages derived, or which may be derived, from the infringement of the plaintiff's copyright by the defendants and each of them, from whatsoever source, whether directly or indirectly, from the first date of infringement and as long as infringement has continued or may continue or, in lieu thereof, to statutory copyright damages, all in accordance with the provisions of the Copyright Act.

6) The plaintiff is entitled to a decree against the defendants requiring defendants, and each of them, to deliver up for destruction all infringing copies and devices and all plates, molds and other matter for making such infringing copies, of the plaintiff's copyrighted song.

■ 7) The plaintiff is entitled to receive from the defendants the costs of this action, and reasonable attorneys' fees to be assessed by the Court (pursuant to Section 116 and the other provisions of the Copyright Act, 17 U.S.C.A.).

■ 8) The counterclaim of defendant Lois Music Publishing Co. is dismissed on the merits, for it acquired no copyright rights in the composition I Love You, Yes I Do.

A judgment in accord herewith may be submitted without undue delay and on notice to all. Appropriate provisions should be included in the judgment, granting relief *inter sese* and judgment over, in accordance with their stipulations and agreements.

## Supplemental Opinion

■ In our opinion dated May 22, 1952, we concluded that "plaintiff is entitled to recover from the defendants, jointly and severally, such damages as the plaintiff has sustained in consequence of defendants' infringement of plaintiff's copyright, from the first date of infringement and as long as the infringement has continued or may continue." Upon reconsideration, we find that joint liability should be restricted to the individual defendants,

Nix, Glover and Millinder. The evidence is sufficient to warrant a finding that these three defendants, with knowledge of plaintiff's song, collaborated in composing and publishing the infringing song. There is no evidence that any of the corporate defendants published recordings or sheet music of the infringing composition with knowledge of the prior publication of plaintiff's composition. Joint liability, therefore, is restricted to the individual defendants and the corporate defendants are liable only for that portion of the damage which is attributable to their individual infringements of plaintiff's copyright. Although we have found that "after due notice by the plaintiff to the defendants of the plaintiff's claim of infringement, the defendants continued to infringe upon the plaintiff's copyright", such a finding unaccompanied by proof to support the additional finding that these acts were jointly committed or done in concert is insufficient to support a conclusion that each is jointly and severally liable for the acts of all the others.