**MCA, INC. d/b/a MCA Music, a division thereof, Plaintiff,**

v.

**Earl WILSON, Jr., et al., Defendants.**

**No. 74 Civ. 3034.**

United States District Court, S. D. New York.

Oct. 21, 1976.

See also, D.C., 425 F.Supp. 457.

Abeles, Clark & Osterberg, New York City, for plaintiff; Robert C. Osterberg, John S. Clark, Raymond Brody, of counsel.

Zissu, Stein, Couture & Mosher, New York City, for defendants; James W. Mosher, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiff MCA, Inc. brings this action under the Federal Copyright Laws, Title 17 U.S.C., for copyright infringement and wrongful appropriation of its copyrighted song, "Boogie Woogie Bugle Boy" (hereinafter "Bugle Boy") by the unauthorized copying of the song by defendants who made it a part of the musical piece entitled "The Cunnilingus Champion of Co. C" (hereinafter "Champion"). Champion is one of several songs performed in defendants' play, "Let My People Come—A Sexual Musical" (hereinafter MUSICAL), which closed at The Village Gate earlier this year. Jurisdiction is predicated upon Title 28, U.S.C. § 1338(a) and (b).

We presided over this non-jury trial May 25–27, 1976. Upon agreement of the parties, [Pre-trial order (PTO) p. 23] the principal issue to be tried to the court was defendants' liability to plaintiff for copyright infringement.[1] For the reasons stated below, we find all defendants liable to plaintiff for the infringement of plaintiff's statutory copyrights in its song, Bugle Boy; also that plaintiff has not sustained its common law copyright claim.

## I

Plaintiff MCA is a music publisher and the proprietor of the statutory copyrights in the song Bugle Boy, written by *Don Raye* and Hughie Prince. [PTO 3Jr. (Wilson) is a composer, lyricist, n–a–13, 3–a–1] Defend-

---

1. The parties agreed that if liability is established, the issue of damages would be promptly referred to a special master for determination. PTO ¶ 8

ant Earl Wilson, Jr. (Wilson) is a composer, lyricist, night club and television singer; he is the co-author of Champion. [PTO 3–a–3] Defendant Phil Oesterman (Oesterman) is a producer-director of MUSICAL. [PTO 3–a–4] Defendant Billy Cunningham (Cunningham) is the musical arranger of Champion and the musical arranger, conductor and piano player for stage presentations of MUSICAL. [PTO 3–a–5] Defendant Gnostic Music Co., formerly named and sued herein as LMPC Music Co., is a partnership of defendants Wilson and Oesterman controlling the rights and copyrights in the musical works used in MUSICAL, including Champion. [PTO 3–a–6] Defendant Libra Company, (Libra) is a limited partnership engaged in the production of MUSICAL, the defendant Oesterman being its sole general partner. [PTO 3–a–7] Defendant LMPC Recording Co., Inc. (LMPC) is a New York corporation originally sued herein under its trade name Libra Records. LMPC produced, and is engaged in the exploitation of, a cast album recording of MUSICAL which mechanically reproduces a rendition of Champion; defendants Wilson and Oesterman are the principals controlling the corporation. [PTO 3–a–8] Defendant Art D'Lugoff (D'Lugoff) is the chief operating officer and a co-owner of Village Rathskeller, Inc., a corporation which owns Village Gate, a New York cabaret, where MUSICAL was performed pursuant to a written license agreement. [PTO 3–a–9]

## II

This litigation concerns two songs: "Boogie Woogie Bugle Boy" and "The Cunnilingus Champion of Co. C." We are called upon to determine whether the latter is so similar to the former as to infringe on plaintiff's copyright of Bugle Boy. At the outset, we examine both "objects" of this case.

Bugle Boy was written sometime prior to December 4, 1940 by Don Raye and Hughie Prince. The song first appeared in printed copies on February 18, 1941 [PTO 3–a–10] with the statutory copyrights in the published and unpublished musical work duly obtained and renewed by plaintiff's predecessors in interest, Leeds Music Corp., a music publisher. [PTO 3–a–11]

In 1968, the original term of the copyright expired and Don Raye and Michael Prince, son of co-writer Hughie Prince, secured the exclusive rights and privileges in the copyright, duly renewing same. [PTO 3–a–11] Three years later, Don Raye and Michael Prince duly assigned to plaintiff MCA all of their rights, title and interest in the copyrighted song. [PTO 3–a–11]

It is uncontradicted that Bugle Boy achieved substantial commercial success in the 1940's as a result of a rendition by the Andrews Sisters. The song was recorded for use in the manufacture and sale of phonograph records and in "Buck Privates," an Abbott and Costello motion picture. [PTO 3–a–14] This movie has been shown on television late night, early morning and weekend since its initial release in the 1940's. [PTO 3–a–17] [2]

In 1973, the early commercial success of Bugle Boy was revived with an up-dated rendition of the song by Miss Bette Midler, a popular music entertainer. Her version of Bugle Boy, substantially similar to the original but done in the singer's own characteristic style, achieved widespread commercial success. [PTO 3–a–18, 18a] Throughout 1973, the Bette Midler long-playing recording entitled "The Divine Miss M" [Pltf. Exh. 18] which includes Bugle Boy among its songs, was listed among the top 200 best-selling, long-playing recordings in the United States; by November 1973, "The Divine Miss M" album was listed among the top 75 albums in the country.

---

**2.** This rendition by the Andrews Sisters was made pursuant to the compulsory license provision of the Federal Copyright Laws, 17 U.S.C. § 1(e). It is substantially similar to the sheet music version of Bugle Boy but contains two significant additions: the chorus line, "He was some Boogie Woogie Bugle Boy of Company B." and a tom-tom style. These changes were made by an employee for hire, Vic Schoen, and are the subject of plaintiff's common law copyright claim. See discussion *infra.*, pp. 454–455.

[PTO 3–a–19] Contributing to the commercial success in 1973 of Bugle Boy was its extensive inclusion on radio stations offering current popular music. Miss Midler, reputedly a dynamic performer, included Bugle Boy as part of her nation-wide personal appearance concerts. [PTO 3–a–20] [3]

Due in large part no doubt to Miss Midler's successful revival of interest in Bugle Boy, two Andrews Sisters long-playing recordings, each reproducing their rendition of Bugle Boy, appeared in November 1973; both were listed among the top 200 list referred to above. [PTO 3–a–21; the albums are Pltf. Exhs. 20, 21]

"Cunnilingus Champion of Co. C" was created as part of a play entitled "Let My People Come—A Sexual Musical." MUSICAL was initially conceived in August 1973 by defendants Wilson and Oesterman; it made its public debut on January 8, 1974. [PTO 3–a–22] Champion was first written by defendant Wilson in November 1973 [PTO 3–a–23] After various changes in the song, Champion became part of the music performed in MUSICAL. In addition to its rendition in the public performances of MUSICAL, Champion appears in the cast album. [Pltf. Exh. 13] Excerpts of the song are printed in MUSICAL'S program. [Pltf. Exh. 25]

### III

Nine issues were tried to the Court: 1) Whether Bugle Boy was copied in whole or in part by the writers of Champion; 2) Whether Champion is substantially similar to Bugle Boy; 3) Whether any of the similarities between Champion and Bugle Boy are attributable to the use of common musical forms and elements in the writing of Champion and are, therefore, non-infringing similarities; 4) Whether Champion is a parody or burlesque of Bugle Boy; 5) Whether any of the similarities between Champion and Bugle Boy result from a copying permissible pursuant to principles of fair use applicable to parody and burlesque; 6) Whether Champion infringes the statutory copyrights in Bugle Boy; 7) Whether plaintiff has any common law copyright interest in the material used in the recordings of Bugle Boy, but not made the subject of copyright protection; 8) Whether the acts of defendants Cunningham and D'Lugoff are sufficient to render them individually liable for copyright infringements; 9) Whether each of defendants is liable for copyright infringement. [PTO, ¶ 9, 1–9] We now undertake a discussion of these issues.

### IV

We hold that the evidence clearly and unmistakably establishes that Champion was copied, in substantial part, from Bugle Boy.

Defendants Wilson and Oesterman, authors of Champion, readily admit that they "were acquainted with Bugle Boy," having heard Miss Midler's version of the song. [PTO 3–a–24] [4] Further, both men were familiar with the Andrews Sisters recording, from the long-playing album or during the viewing of "Buck Privates." These facts standing alone are not surprising since, as we indicated earlier, Bugle Boy enjoyed widespread commercial success, first in the 1940's and more recently in 1973. In fact, Miss Midler's rendition of Bugle Boy was played so frequently in 1973 on popular radio shows that it would have been difficult for one living in this media-dominated city (especially people like Wilson and Oesterman whose profession is music) to avoid hearing "Boogie Woogie Bugle Boy." This fact of familiarity, coupled with other persuasive evidence, amply supports the inference that Wilson and Oesterman copied Bugle Boy in writing Champion.

First, Wilson admits that he, along with the cast members of MUSICAL, played Bu-

---

**3.** Miss Midler also made a single, 45 RPM recording of Bugle Boy. See Pltf. Exh. 19.

**4.** Deft.Post-Tr. Memo, p. 5 This satisfies the element of access, which along with substantial similarity, must be proved to sustain an action for copyright infringement. See *Blazon v. Game Corp.,* 268 F.Supp. 416 (SDNY 1965); see generally Nimmer on Copyright, § 141.2, p. 613.

gle Boy several times at a rehearsal in early November 1973. At that point in time, Wilson had the first version of the lyrics of Champion but its music was not set or finalized. [PTO 3–a–26] Oesterman had also heard Bugle Boy shortly before he commenced the writing of a musical arrangement for Champion. [PTO 3–a–24]

Testimony at trial provided further insight into the creation of Champion. Wilson admitted, on cross-examination, that he copied the "eight to the bar rhythm" from Bugle Boy for Champion; that the alliteration of both titles suggests similarity. [Tr. 256, 1. 18–21][5] Further, Wilson testified that "the first part of the chord progression which I changed was the same jazz chord progression used in both numbers." [Tr. 256, 1. 23–25]

There is further evidence of copying in the "similarity in the movement of the musical line . . . ." [Tr. 258, 1. 8–9] The line in question appears on the second page of Wilson's lead sheet (marked Deposition Exhibit 1 for Identification). Quite persuasive evidence of copying is the similarity in the title of both songs. [see Tr. 246, 1.18–20]

Other impressive evidence on the issue of copying comes from the trial testimony of two of the original cast members of MUSICAL. Tobie Columbus testified convincingly that when Champion was first introduced at a rehearsal by Wilson, he and cast members referred to a sheet music copy of Bugle Boy. [Tr.102, 1.2–15] Miss Columbus further stated that Bugle Boy was played at one of the rehearsals of MUSICAL. [Tr. 102, 1.18–19] Witness Lena Eure, also an original cast member of MUSICAL, testified to the same effect. [Tr.153, 1.3–24] Her testimony is convincing on this point:

". . . it was mentioned [at the rehearsal of musical] as to how it would be funny if we could get Cunnilingus Cham-

pion to sound similar to Boogie Woogie Bugle Boy just to create some publicity, so they [Larry Paulette, actor; Wilson and others] began to try to work out the melody as to how he wanted it to go. . . ." [Tr.154, 1.6–10]

Witness Eure continued in her description of the rehearsal where Champion was introduced:

"he [Wilson] mentioned the tune Boogie Woogie Bugle Boy to refresh everybody's memory, how he wanted the song to sound. That is when we started harmonizing and singing it." [Tr.155, 1.12–15]

■ There is a significant indication in the trial record that Wilson *knew* he was copying Bugle Boy. Witness Columbus testified that Wilson said:

"there had to be notes changed. They may not be the same. They could be similar but they could not be the same and notes had to be changed. . . . I remember he even said so many notes for every measure had to be different so he would not get into trouble." [Tr.104, 1.2–7]

We find her testimony credible indeed on the issue of copying.[6]

■■ Additional evidence that Champion was copied from Bugle Boy comes from one of the defendants. Cunningham, the musical arranger of Champion, testified on cross-examination that he incorporated "a logical sequence of notes" into Champion, and that those notes duplicated a sequence from the Bette Midler recording of Bugle Boy. [Tr.298, 1.8–13] He also testified that he employed the same bass line in Champion as found in Bugle Boy, even though he could have though of, and used, at least seven other bass lines appropriate for "boogie woogie music." [Tr.280, 1.5–9; Tr.281, 1.6–7] His lame excuse that 95% of the "boogie woogie" songs of which he is aware contain one of the eight characteris-

5. The following notation system will be employed in this opinion: "Tr." followed by a number refers to the official trial record; "Pltf. Exh." and "Deft. Exh." refer to plaintiff's and defendants' exhibits, respectively.

6. As to the credibility of this and other witnesses, the words of Judge Duffy are instructive:

"District Judges are charged with the responsibility of determining credibility of witnesses because our court system recognizes that the signs of credibility are more than just those found in a cold record." *United States v. Tramunti*, 377 F.Supp. 1 (S.D.N.Y.1974).

tic bass lines is as unconvincing as the rest of his testimony. [Tr.280, 1.10–13] It does not explain why he chose the identical bass line from Bugle Boy when admittedly at least seven others are available. Taken in conjunction with the other similarities heretofore described, this would appear to constitute conscious copying, not mere coincidence.[7]

Harold Barlow, plaintiff's expert witness who is a music plagiarism expert with 26 years experience, testified:

"what exists in common between the two compositions in question exceeds the bounds of coincidence and defendants' song could not have been arrived at independently." [Tr.25, 1.5–8]

We were impressed to an exceptional degree by the testimony of this witness.

Russell Goudey, defendants' expert, and presently a consultant in plagiarism matters with many years experience in the music field, vouched for the accuracy of Mr. Barlow's comparison charts which were prepared to illustrate the similarities and identities between Champion and Bugle Boy. [Tr.362–371; the charts are Pltf. Exhs. 29a–j.]

From all of the evidence highlighted above, we are left with the clear impression, and we so hold, that Champion was intentionally copied, in substantial part, from Bugle Boy.

## V.

Our disposition of the next issue, i.e., whether Champion is substantially similar to Bugle Boy, directly and logically follows from our prior determination that the former was copied in substantial part from the latter. We hold that Champion is substantially similar to Bugle Boy.

First, the expert testimony of Harold Barlow, acknowledged to some degree by defendants' expert Russell Goudey, highlights many similarities in the two songs. [Tr.25–69] This testimony was bolstered by written reports [Pltf. Exh.29] and enlarged charts [Pltf. Exhs. 29a–1, 30–32]. These excellent charts illustrate many important similarities, qualitatively and quantitatively, between Champion and Bugle Boy. Asked to describe in general terms the overall musical similarity and identity between the two songs, Mr. Barlow stated:

"Generally both compositions employ . . . a 12-bar structure which is used in repetition involving notes in the main that are 8 beats to the bar in certain areas of the melody and certain areas of the bass. There is a general harmonic similarity and certain specialized rhythmic patterns are also in common in the two compositions . . . also . . . certain . . . breaks . . . are found to be in common in the two compositions." [Tr.25, 1.12–20][8]

The persuasive expert testimony, bolstered by the charts, revealed additional similarities: an identity of as many as twelve notes, nine in succession in chorus phrases of Champion and Bugle Boy [Pltf. Exhs.29, 29(a); Tr.28, 1.10–22]; the chord structures are the same [Tr.28]. Directing his attention to one particular passage, Mr. Barlow continued:

"the passage has 9 notes in common which now evolves a departure from the 8 beats to a bar that is identifiable as being Boogie Woogie; so that a rather peculiar pattern which appears in Boogie Woogie Bugle Boy, instead of being . . . a succession of 8 notes . . . now shows a specialized broken pattern. . . . Consequently, this is an additional point of duplication, and this entire passage, which in Boogie Woogie Bugle Boy occurs a number of times, may be

---

**7.** We do not intend to imply that "consciousness" is a requisite element to be proved in copyright infringement actions. On this score, we agree with Judge Owen that even a "subconscious" taking of another's copyrighted song constitutes infringement. *Bright Tunes Music Corp. v. Harrisons Music Ltd.,* 420 F.Supp. 177 (Opinion and Order filed August 31, 1976.) See also *Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 54 (2d Cir. 1936).

**8.** "A 'break' is a passage, usually done by one instrument or related to what may be different from the other parts of the composition." Tr.25, 1.22–24

considered the fingerprint of the composition. . . ." [Tr.29, 1.12–22]

This so-called "fingerprint" passage appears five times in Bugle Boy and four times in Champion. [Tr.31, 1.3–13][9]

A comparison of measures 6 through 12 of Bugle Boy with the opening measures of Champion reflects 18 notes in common, with 9 consecutive notes. [Tr.33–40; Pltf. Exh.29] Aside from an identity in music, the accompanying lyrics of both songs contain the sentence, "He's in the Army now." [Tr.34, 1.10][10] Mr. Barlow commented on the importance of these facts: "the extremely, highly significant strength of having both words and notes in common far surpasses a situation where there are more notes in common with no words at all." [Tr.34, 1.12–14] He concluded: "The qualitative significance is great. . . ." [Tr.37, 1.14; see also Tr.34, 1.15–20] We reiterate our very favorable reaction overall to this witness' testimony.

Other identities appear between measures 10–12 of Bugle Boy and measures J–L of the lead sheet of Champion. [see Pltf. Exh.29c] Plaintiff's expert considered this section to be part of the "fingerprint" of Bugle Boy. [Tr.41, 1.13–15] The similarities include: the title line appears in the lyrics in both passages; both passages have six notes in common, five consecutively (the consecutive notes accompany the lyrics, "of Company B" in Bugle Boy and "of Company C" in Champion). Further, the introductory bass line of the sheet music edition of Bugle Boy, first three lines (duly copyrighted), is duplicated in the score of Champion and in the January 27, 1974 live recording of the song. [Pltf. Exh.17] These three measures consist of a series of 24 consecutive notes, all identical. [Pltf. Exh.29j]

A tom-tom passage from the Andrews Sisters rendition of Bugle Boy has nine notes in common with a similar passage in the Champion score and recording. [Pltf. Exh. 29k] With respect to this same passage in Bette Midler's version, there are 12 notes in common. [Pltf. Exh. 29l] Some peculiarities of the Midler passage are imitated precisely in Champion. [Tr. 67, 1.3–19][11] Another similarity is that Bugle Boy begins with an "8 beat to the bar" bass and continues with a "4 beat bass"; Champion proceeds in a like manner. [Tr. 399–400, 1.17–12]

Two final points on the question of whether Champion is substantially similar to Bugle Boy. The first relates to the admissibility of certain proffered testimony respecting the comments of third parties as to the similarity of the two songs.

■ Since one of the crucial tests in a copyright infringement case is whether the allegedly infringing work is recognizable by ordinary observation as having been pirated from the copyrighted source, any evidence directly bearing on the observations of the audience of MUSICAL and the cast members to the rendition of Champion is clearly relevant. See *Fleischer Studios v. Freundlich,* 73 F.2d 276 (2d Cir. 1934); *Herman Frankel Organization v. Tegman,* 367 F.Supp. 1051, 1053 (E.D.Mich.1973); see generally, Nimmer on Copyright, § 143.52, p. 636. "Certainly there can be no dispute that the spontaneous and immediate reactions of the ordinary observer are relevant evidence in determining the existence of copying." *Id.*

■ Defendants urge that such evidence, even if relevant, must be ruled inadmissible on hearsay grounds. [Deft.Post-Tr.Memo.p.52]. We disagree and overrule

---

9. "It is in the melody of the composition—the arrangement * * * or succession of musical notes, which are the fingerprints of the composition." *Northern Music Corp. v. King Record Distribution Co.,* 105 F.Supp. 393, 400 (S.D.N.Y.1952).

10. Defendants concede this lyric similarity. Deft. Post-Tr. Memo. On this point, see Tr. 50, 1.9–18; Pltf. Exh. 29G.

11. It is interesting to note that Mr. Barlow testified that while the tom-tom effect may be "peculiar and unique" to boogie-woogie music, it nevertheless appears in both Bugle Boy and Champion.

defendants' objections to the proffered evidence. Federal Rules of Evidence 803(1) excepts from hearsay present sense impressions. The spontaneous reactions of cast and audience to the playing of Champion are sense impressions of weight; their spontaneity provides their reliability and cures any hearsay infirmities.[12] See *American Cooperative Serum Association v. Anchor Serum Co.*, 153 F.2d 907, 912 (7th Cir. 1946); 4 Weinstein on Evidence, § 803(1)(01). For this reason, testimony by Tobie Columbus, original cast member, to the effect that other cast members and a number of audience members told her, at the times with which we are here concerned, that Champion "sounded like "Bugle Boy is admitted. Additionally, the testimony of witnesses Eure and Bruce Naylor (also cast members) to the same effect is relevant and admissible on this point. [Tr. 119–122] This evidence reinforces our ruling that Champion is substantially similar to Bugle Boy.

▋ Finally, as defendant readily asserts: "[T]he Court is the ultimate judge of substantial similarity . . . and the many recorded exhibits are available for listening . . .. It is respectfully urged that the Court . . . listen carefully to the recorded exhibits several times . . .." [Deft.Post-Tr.Memo., p. 51]
We have done just that; over and over again, scores of times, we have played the Andrews Sisters and Bette Midler versions of Bugle Boy and Champion. Putting it bluntly, we gave what is tantamount to microscopic attention to the totality of the evidence, particularly the recordings and charts. This process has left us with the unmistakeable impression that Champion *is* substantially similar to Bugle Boy. This personal assessment, along with the solid evidence of multiple similarities offered by plaintiff's expert, whose credibility we previously noted with approval, as well as the testimony of the three cast members, compels us to conclude that Champion is substantially similar to Bugle Boy.[13]

In the remainder of the opinion, we will endeavor to resolve, *inter alia*, whether this similarity is attributable to common musical forms, whether Champion is parody or burlesque, whether the similarities are justifiable under principles of "fair use" and whether Champion infringes the statutory and common law copyrights in Bugle Boy.

## VI

We now face the question whether any of the similarities between Champion and Bugle Boy are attributable to the use of common musical forms and elements in the writing of Champion and therefore non-infringing similarities.

Defendants argued at trial that many of the identities between the songs were characteristic of much "boogie woogie" type music, hence non-infringing similarities. In fact, defendants offered into evidence several song books containing various "boogie woogie" songs. [Deft.Exhs.E–H] It is not in dispute that if the only similarity between the songs is due to common music forms, such as are in defendants' "boogie woogie" books, then plaintiff's copyright infringement claim would fall. However, defendants failed in their proof on this point.

The most significant testimony came from defendant Mr. Cunningham. He testified that the base line in Champion, which is the same bass line as Bugle Boy, is a

---

**12.** The reliability of present sense impressions is based upon:

"1) the statement being simultaneous with the event, there is no memory problem; 2) there is little or no time for calculated misstatement and 3) the statement is usually made to one who has equal opportunity to observe and check misstatements." 4 Weinstein on Evidence, p. 803–74.

**13.** There is a marked similarity between the two songs in one particular line, not subject to plaintiff's statutory copyright claim: "He was some Boogie Woogie Bugle Boy of Company B" with "He was some Cunnilingus Champion of Company C." Plaintiff contends that this similarity, and others in the non-copyrighted material bolster its common law copyright claim. *Since we reject the common law claim below (see discussion infra,* pp. 454–455) we need not explore the similarities in this material any further.

common musical form. [Tr. 280] He further testified that there are at least eight "boogie woogie" bass lines that he is familiar with, yet he could not explain how he happened to settle upon the identical bass line as in Bugle Boy.[14] We give little credence to this defendant's testimony. His deportment on the stand, the many inconsistencies adduced, compel that conclusion. We conclude similarly with respect to our overall impression of Mr. Oesterman's testimony.

■ The fact that defendants were able to point to several other "boogie woogie" songs to support their claim of common musical form is not persuasive. At no point in the trial record is there any indication that defendants referred to these other "boogie woogie" songs in composing Champion. Indeed, the trial record is crystal clear on this point: Wilson and Oesterman played Bugle Boy several times at a rehearsal in early November 1973, when Champion was in its "embryonic" stage. And Cunningham heard Bugle Boy (Bette Midler's version) *shortly before* he composed the musical arrangement for Champion. [PTO 3–a–30–34][15] Hence, we are left with the firm impression that, while there may be many forms of "boogie woogie" music, Wilson, Oesterman and Cunningham relied on, and copied in substantial part, the lyrics and music of one particular "boogie woogie" song, Bugle Boy. Accordingly, we categorically reject defendants' contention that any similarity between Champion and Bugle Boy is attributable to common musical forms and hence noninfringing. See *Detective Comics Inc. v. Bruns Publications*, 111 F.2d 432, 433 (2d Cir. 1940); *Hartfield v. Peterson*, 91 F.2d 998, 1000 (2d Cir. 1937).

## VII

We now undertake an analysis of the principal argument advanced by defendants: that Champion is a parody or burlesque on Bugle Boy and that any similarity between the two songs is permissible under the doctrine of fair use.

■ There is no express recognition of the defense of fair use in the Federal Copyright Laws. However, courts have long recognized that certain acts of copying are defensible as fair use. See *Dellar v. Goldwyn, Inc.*, 104 F.2d 661 (2d Cir. 1939): See generally Nimmer on Copyright, § 145 at p. 643.

> "Fair use is to be determined by a consideration of all of the evidence, and among other elements entering into the determination of the issue, are the extent and relative value of copyrighted material, and the effect upon the distribution of objects of the original work. . . . Whether a particular use of a copyrighted article, without permission of the owner, is a fair use, depends upon the circumstances of the particular case, and the court must look to the nature and objects of the selections made, the quantity and value of material used, and the degree in which the use may prejudice the sale, diminish the profits or supercede the objects of the original work . . . ." *Meredith v. Harper and Row Publishers, Inc.*, 378 F.Supp. 686 (S.D.N.Y.1974), quoting *Mathews Conveyor Co. v. Palmer-Bee Co.*, 135 F.2d 73, 85 (6th Cir. 1943); See generally Nimmer on Copyright, § 145, pp. 645–46.

■ The law regarding fair use has been interpreted in various ways depending on the art form at issue. In Burlesque [16] "the law permits more extensive use of the protectible portion of the copyrighted work in the creation of a burlesque of that work than in the creation of other fictional or dramatic works not intended as a burlesque of the original." *Columbia Pictures Corp. v. National Broadcasting Co.*, 137 F.Supp. 348; 354 (S.D.Calif.1955). Even where there

---

14. See discussion *supra*, pp. 448–449.

15. See discussion *supra*, pp. 447–449.

16. "Burlesque" is defined as: "That species of literary composition, or of dramatic representation, which aims at exciting laughter by caricature of the manner or spirit of serious works, or by ludicrous treatment of their subjects"; Oxford English Dictionary.

is a substantial similarity in the two works, such copying may be defensible under fair use principles where the defendant's work is considered "burlesque." Nimmer on Copyright, § 145, p. 650.

The threshold question is whether the defendants' work, Champion, constitutes a burlesque or parody [17] on plaintiff's copyrighted song, Bugle Boy.

Defendants argue that Champion is pure burlesque:

"That species of literary composition or of dramatic presentation, which aims at exciting laughter by caricature of the manner or spirit of serious works, or by ludicrous treatment of their subjects . . . ." [Deft.Post–Tr.Memo., p. 19]

Mr. Wilson testified at trial that he "intended [Champion] to be a burlesque . . of the music of the 1940's, of the Andrews Sisters style of singing and of Boogie Woogie Bugle Boy . . . ." [Tr. 213] We find this testimony unacceptable for the following reasons.

First, defendants concede that Champion was not intended to be a parody of Bugle Boy in the sense of taking Bugle Boy out of context in an attempt to hold it up to ridicule. [PTO 3–a–51, 52] Defendants may have sought to parody life, or more particularly sexual mores and taboos, but it does not appear that they attempted to comment ludicrously upon Bugle Boy.[18] During cross-examination, defendant Wilson admitted that he was not really burlesquing Bugle Boy, but rather, "using 'Cunnilingus Champion' as a vehicle to do a burlesque of the '40's, and World War II activity." [Tr. 263, 1. 6–10] Wilson further testified that he did not intend Champion to be a parody of Bugle Boy. [Tr. 261, 1. 9–11] His intent was to "take that innocent style of music and combine it with words that are often considered to be taboo to make a very funny point." [Tr. 266, 1. 4–6] Taking this witness' testimony *in toto*, we are constrained to state that, qualitatively and quantitatively, it did not meet the test of credence.

In rejecting a fair use defense based upon parody, the court in *Walt Disney Productions v. Mature Pictures Corp.*, 389 F.Supp. 1397–98 (S.D.N.Y.1975) said:

"While defendants may have been seeking . . . to parody life, they did not parody the Mickey Mouse March but sought only to improperly use the copyrighted material."

Accordingly, we hold that Champion is not a parody or burlesque of Bugle Boy. Champion, as well as MUSICAL in its entirely, attempts to burlesque life, more particularly sexual mores. This purpose does not justify the unwarranted use and abuse of Bugle Boy.

Since we believe that Champion is not a burlesque or parody of Bugle Boy, we need not reach the question of whether defendants' copying of Bugle Boy exceeds the fair use applicable to those art forms.[19]

---

17. "Parody" is defined as: "A composition of prose or verse in which the characteristic turns of thought and phrase in an author or class of authors are imitated in such a way as to make them appear ridiculous, especially by applying them to ludicrously inappropriate subjects. Also applied to a burlesque . . . ." Oxford English Dictionary. For the purposes of this opinion, the fine distinctions between burlesque and parody are ignored. See *Benny v. Loew's Inc.*, 239 F.2d 532 (9th Cir. 1956), aff'd 356 U.S. 43, 78 S.Ct. 667, 2 L.Ed.2d 583 (1958).

18. Clearly, when Champion was written, it was not intended to make any statement about Bugle Boy, but rather was meant to project the message that sex is good, clean and wholesome. PTO 3–a–53, 54; see deposition testimony of defendant Wilson, Tr. 184, 1. 1–20. It is significant that defendants did not even raise the defense of fair used based on parody or burlesque until their amended complaint, one year after the commencement of the action.

19. Similarly, we do not reach the question of whether Champion satisfied the same demand as Bugle Boy. This test in copyright infringement cases is appropriate where a determination is called for as to whether the allegedly infringing song is a parody. Our ruling above that Champion is not parody or burlesque of Bugle Boy makes it unnecessary to enter into this analysis. See *Leo Feist v. Song Parodies, Inc.*, 146 F.2d 400 (2d Cir. 1944); *Berlin v. E. C. Publications, Inc.*, 219 F.Supp. 911, 914 (S.D.N.Y.1963).

We simply note that, assuming *arguendo* Champion is a burlesque of Bugle Boy, the amount copied from the latter far exceeds the permissible scope under recent case law. In *Berlin v. E. C. Publications*, 329 F.2d 541, 545 (2d Cir. 1964), our Circuit Court held:

> "Where the parodist does not appropriate a greater amount of the original work than is necessary to 'recall or conjure up' the object of his satire, a finding of infringement would be improper.

Champion not only conjures up the memory of Bugle Boy, it shares some of the same lyrics and music. Such a substantial taking, under any test, is unfairly excessive.

## VIII

The issue of whether Champion infringes the statutory copyright of Bugle Boy has been disposed of hereinabove and for reasons now succinctly put: Champion was copied in large part from Bugle Boy; Champion is substantially similar to Bugle Boy; the similarities are not attributable to the use of common musical forms; Champion is not parody or burlesque of Bugle Boy and therefore defendants are not entitled to the defense of fair use; even if fair use were available to them, the amount and nature of their taking is clearly excessive. Accordingly, we are constrained to, and do, hold that "Cunnilingus Champion of Co. C" infringes the statutory copyrights of "Boogie Woogie Bugle Boy."

Many courts have adopted the "ordinary observer" or "audience" test as the ultimate determining factor in copyright infringement actions, assuming access and substantial similarity.[20] See *Fleischer Studios v. Ralph A. Freundlich*, 73 F.2d 276, 278 (2d Cir. 1934), *cert. den.* 294 U.S. 717, 55 S.Ct. 516, 79 L.Ed. 1250 (1935). In that case, the Second Circuit stated, "[W]hat the appellant constructed is recognizable by an ordinary observer as having been taken from the copyrighted source. Such is an infringement." *Id.*

Nothing is gained by repeating the impressive evidence set out in full detail above [see discussion, pp. 7–16] on the issue of similarity. Suffice it to say that the record is replete with testimony from various sources that Champion was observed to be similar to Bugle Boy. Defendants themselves testified that Champion sounded like Bugle Boy. [Tr. 138, 147, 201] Cast members agreed. [Tr. 96, 121, 137, 139, 140, 157, 158, 162, 201] So too did members of the viewing audience. [Tr. 118, 121, 166–168]

We conclude that defendants had access to Bugle Boy, and created a song, Champion, which was substantially similar to Bugle Boy thus infringing on plaintiff's statutory copyrights.

## IX

We turn now to plaintiff's common law copyright claim. Aside from the statutory copyright cause of action, plaintiff maintains that it has a proprietary right under the common law to materials added to its copyrighted work by a licensee.[21]

The material in question consists of two sections of Bugle Boy which were created by Vic Schoen, an employee for hire of the Andrews Sisters to accommodate their artistic style in recording Bugle Boy under the compulsory license provision. [see PTO 3–a–55] The sections involved are the lyric phrase "He was some boogie woogie bugle boy of Company B" with musical accompaniment, and a tom-tom style musical section.

---

**20.** Access and substantial similarity have heretofore been established. See discussion *supra.*, IV and V. "The question really involved . . . is to ascertain the effect of the alleged infringed play upon the public, that is, upon the average reasonable man. If an ordinary person who has recently read the story sits through the presentation of the picture, if there had been literary piracy of the story, he should detect that fact without any aid or suggestion or critical analysis by others. The reaction of the public to the matter should be spontaneous and immediate." Nimmer on Copyright, § 143.52, p. 635, quoting *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 18 (9th Cir. 1933).

**21.** It should be noted that plaintiff amended its original complaint to add this cause of action; in the first complaint, it sued solely for infringement of statutory copyright.

Plaintiff admits that it never acquired any rights in these additions by express agreement with the Andrews Sisters or Vic Schoen. [PTO 3–a–56; pltf. Tr. Memo. p. 28] However, plaintiff argues that it has acquired proprietary rights to the material under common law through the principles of copyright. Essentially, plaintiff contends, ". . . the copyright owner of the musical work should be recognized as the copyright owner of all limited arrangements and adaptations thereof, for all purposes, consistent with §§ 1(b) and 7 of the Copyright Law, 17 U.S.C. § 1(b) and 7." [Pltf. Tr. Memo. p. 30] We do not agree.

Plaintiff has cited no case law or statutory authority to support its novel "common law" claim. We are more concerned with the failure to find the latter, since copyright actions are statutory creations. Copyright did not exist at common law, but was created by statute enacted pursuant to constitutional authority. See *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954).

Our own research has likewise failed to uncover any statutory or case authority for plaintiff's common law claim. Indeed, the material added to the copyrighted version of Bugle Boy by Vic Schoen appears to be in the nature of a derivative work:

"Under the conventional doctrine of derivative works and under the provisions of § 7 of the Copyright Act, the owner of the underlying work retains his copyright therein, while the person who creates the new version may claim an exclusive copyright in it, subject to his license to use the underlying work. The owner of the underlying work does not obtain any property right in the derivative work and likewise the owner of the derivative work does not obtain any property right in the underlying work." [Nimmer on Copyright, § 73, pp. 280–81]

Since we hold that plaintiff has not adequately sustained its claim for common law copyright protection of the added material in the Vic Schoen arrangement of Bugle Boy, we need not address the question of whether the public dissemination of a musical work (or part thereof) in phonograph record form prior to the securing of statutory protection constitutes a "publication so as to dedicate the work to the public domain." See *Rosette v. Rainbo Record Manufacturing Corp.*, 354 F.Supp. 1183 (S.D.N.Y.1973); see also *Nom Music Inc. v. Kaslin*, 227 F.Supp. 922, 926 (S.D.N.Y.1964), aff'd 343 F.2d 198 (2d Cir. 1965).

## X

We now turn to the final issues of the case: Whether the acts of each of the defendants are sufficient to hold them liable for copyright infringement.

There is no question that defendants Wilson and Oesterman are personally liable for the infringement of plaintiff's statutory copyright in Bugle Boy—they wrote the infringing song, Champion. [PTO 3–a–3, 4] [22] Defendant Cunningham was the musical arranger of Champion and the musical arranger, conductor and piano player for stage presentations of MUSICAL. Defendants maintain that Cunningham's contribution to Champion "is an insufficient participation to render him personally liable." [Deft.Post-Tr. Memo. p. 56] We disagree.

During pre-trial examination, Cunningham testified that he made "several" changes to Champion: he changed some of the vocal structure to accommodate harmonic line; changed the piano arrangement defendant Wilson had played; changed the key from F to B flat; added an instrumental line; added other instruments and made Champion more of an "eight to the bar" boogie, like Bugle Boy. [Cunningham Depo. 132–135]

Significantly, Cunningham admitted that as music director, he was given "carte

---

**22.** Indeed, defendants state:

"those primary [sic] responsible for the creation and exploitation of Cunnilingus Champion defendants Wilson, Oesterman and their

various companies, are all active parties and fully available to respond to any damages that may be found." Deft.Post–Tr. Memo., pp. 58–59.

blanche." [Cunningham Depo. 135, 1.19–20] Further, defendant was aware of the similarity of Champion to Bugle Boy, and even discussed the issue with defendants Oesterman and Wilson. [Cunningham Depo. 138, 1.2–17] Based upon this participation, Cunningham must be held liable for the infringement of plaintiff's statutory copyright in Bugle Boy. As a joint tortfeasor, he is jointly and severally liable with other defendants for the wrong.[23] See *Gershwin Publishing Corp. v. Columbia Artists Manufacturing Inc.*, 443 F.2d 1159 (2d Cir. 1971); *Northern Music Corp. v. King Record Distributing Co.*, 105 F.Supp. 393 (S.D.N.Y. 1952).

The involvement of defendant D'Lugoff in the infringement of plaintiff's copyright is less direct; yet we find it sufficient in law to hold him personally liable to plaintiff. D'Lugoff knew the nature of MUSICAL and its contents when he licensed the premises, Village Gate, for performances. [PTO 3–a–46] More importantly, he retained rights of supervision and control over the premises [PTO 3–a–47; Pltf. Exh.26] and received a continuing percentage of financial interest in the proceeds from the sale of tickets to MUSICAL:

> "When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of the copyrighted materials—even in the absence of actual knowledge that the copyright monopoly is being impaired . . .—the purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation." *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)(Emphasis added).

Further evidence of defendant D'Lugoff's personal involvement is presented: his name appeared as owner of Village Gate on MUSICAL'S programs [Pltf. Exh.25]; he secured an indemnification against liability in the written license for defendants' acts on the premises. [Pltf. Exhs.26, ¶ 26,

p.21] D'Lugoff operated food and liquor concessions on the premises during performances of MUSICAL, thus profiting directly from the popularity of the show. [Tr.273, 1. 6–8] We refer to defendant's own words in describing his involvement in the day to day activity of Village Gate where MUSICAL was performed regularly: ". . . [I was] running the place and nothing was too big or too small to come within the orbit of [my] function." [Tr. 272, 1. 2–5]

We hold that this level of control over the premises where the copyright infringement transpired is sufficient to require that defendant D'Lugoff assume personal liability for his acts and those of his co-defendants. We emphasize that the law contemplates the liability of defendant even if he had no personal knowledge of the infringing song. As the Court said in *Shapiro, supra.*, the proprietor is liable for copyright infringement, "whether or not the proprietor has knowledge of the compositions to be played or any control over their selection." *Id.*, at 307 (citing numerous cases).

Accordingly, we find that each defendant is personally liable as a joint tortfeasor for the infringement of plaintiff's statutory copyright in "Boogie Woogie Bugle Boy," by virtue of the creation and exploitation of the infringing song, "Cunnilingus Champion of Co. C." See *Celestial Arts Inc. v. Neyler Color-Lith Co.*, 339 F.Supp. 1018, 1019 (E.D. Wis.1971). Plaintiff has failed, however, to sustain its claim for relief under the second cause of action of his amended complaint (the common law copyright claim).

This opinion shall constitute our findings of fact and conclusions of law, pursuant to Fed.Rule Civ.P. 52(a). Plaintiff shall submit an appropriate judgment on notice including the referral to a special master for the determination of damages.

SO ORDERED:

*Screen Gems-Columbia Music, Inc. v. Metlis and Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972).

---

23. "Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable."